## BATEMAN v. RICHARD et al.

No. 14979—Opinion Filed Jan. 6, 1925.

**1. Brokers—Sale of Real Estate—Reasonable Commission.**

Where the owner lists real property with a broker at a net price, such broker in the absence of an express contract to that effect is not entitled to receive as a commission all the selling price in excess of such list price, but is merely entitled to a reasonable commission not exceeding such excess.

**2. Evidence — Broker's Powers Limited by Writing—Varying by Parol.**

Where a real estate broker's powers are embodied in a written agreement it cannot be varied by parol evidence.

**3. Brokers—Right to Commission—Procuring Mere Counter Offer from Prospect.**

A real estate agent in order to recover commission for the sale of real estate must produce a purchaser who is ready, able, and willing to purchase upon the terms agreed upon, and where a broker procures one who makes a counter offer more or less at variance with that of his employer and the employer refuses to accept the proposed party upon the altered terms, he incurs no liability to the broker.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Texas County; Arthur G. Sutton, Judge.

Action by George E. Richard and F. A. Blake, a copartnership doing business under the firm name of Richard-Blake Real Estate Company, against F. A. Bateman. From judgment in favor of plaintiffs, defendant brings error. Reversed.

V. H. Grinstead, for plaintiff in error.

J. S. Harris and John L. Gleason, for defendants in error.

Opinion by PINKHAM, C. The defendants in error, Richard & Blake, a real estate firm, as plaintiffs, instituted this action against the plaintiff in error, F. A. Bateman, as defendant, to recover $3,000 alleged to be due as commission for the sale of certain land.

The parties will be referred to as they appeared in the trial court.

Plaintiffs' petition alleged, in substance, that about March 1, 1919, the defendant listed a section of land with plaintiffs for sale "at the net price of $32,000, said land to be sold by June 1, 1919, or the contract shall be at an end".

Plaintiffs filed an amended petition, which discloses that the action was brought on a written agreement between plaintiffs and defendant; a copy of which contract was attached to and made a part of the petition and marked exhibit "A."

It was alleged in the amended petition that "in pursuance of said written option plaintiffs procured one Clarence L. Moore, of Pratt, Kan., to enter into a contract for the purchase of said tract of land; a copy of said contract is hereto attached, marked exhibit "B", and made a part of this petition".

It was further alleged in the amended petition that said contract (exhibit "B") was made between the plaintiffs and the said Moore individually; that it was the purpose and intent of the said Moore and the plaintiff to have the said Moore enter into a written contract with the said defendant wherein and whereby the said Moore should undertake and agree to purchase said tract of land from the defendant for the sum of $35,000, $3,000 of which should be commission for the plaintiff, and $32,000 of which should go to the said defendant, said sum of $32,000 to be paid the defendant as follows: $14,000 in cash and balance to run five years at 8 per cent. interest, with the privilege of paying the principal at any interest paying date; that said Moore was on and prior to June 1, 1919, ready and willing to enter into a contract with the defendant, for the purchase of said land upon the said terms, and that said Moore was at all times able to purchase and pay for said land on said terms; that the plaintiff duly notified the defendant of all the facts and circumstances hereinbefore set out and such notification was made before June 1, 1919, but the defendant refused to convey the land, plaintiffs claiming damages in the sum of $3,000, being the excess of the sale over the list price of $32,000.

To the amended petition defendant filed a demurrer, which was overruled and exceptions saved. The answer was a general denial, and that plaintiffs had no authority to enter into the contract which they entered into with Moore.

The case was tried before a jury and resulted in a verdict and judgment in favor of plaintiffs for the sum sued for.

Motion for new trial was overruled; defendant appeals.

The errors assigned and discussed by counsel for defendant in their brief are that the court erred in overruling the demurrer to the amended petition and in overruling defendant's objections to the introduction of evidence; that the verdict of the jury is not sustained by the evidence; and that the court erred in the instructions to the jury.

The amended petition discloses that the plaintiffs brought their action on the written agreement between plaintiffs and defendant, a copy of which agreement was made a part of the amended petition. Under this contract (exhibit "A") the defendant agreed to furnish warranty deed and abstract of title showing the land involved free and clear from all incumbrances; to be sold by the first day of June, 1919; price to be paid to defendant, $32,000, net to the defendant; defendant to give one-third of all wheat to market free of charge to purchaser; "terms as follows: $14,000 cash, bal. to run five years at 8 per cent. or can be paid any interest pay day. If land is not sold before this time contract is null and void."

The contract (exhibit "B") made a part of the amended petition entered into between the plaintiffs as the first party and Moore, the alleged purchaser, as second party, provides, in substance, that the first party agrees to sell for a consideration of $35,000 and the second party agrees to purchase for this consideration the land in question.

"Consideration above mentioned is to be paid as follows: Deposited in F. & M. Bank 5-7-1919. $500 cash paid with this contract, deposited in escrow. $9,500 cash to be paid on contract within thirty days from date. $25,000 more to be paid on August 1, 1919. Second party may let $20,000 of this run, payable on or before five years from August 1, 1919, to draw 8 per cent. interest payable annually. * * * Conveyance is to be made by delivery of deed and settlement on August 1, 1919."

It will be observed that the contract entered into by the plaintiffs and Moore did not comply with the plain and unambiguous terms of the contract between plaintiffs and the defendant. By the express terms of the listing agrement the time limit for the sale of the land was June 1, 1919, $14,000 cash, the balance, $18,000, payable in five years.

The sale contract between the plaintiffs and Moore dated May 7, 1919, provided a cash payment of $500, $9,500 to be deposited in escrow by June 7, 1919, and $25,000 pay-

able in five years, the transaction to be closed up by delivery of a deed August 1, 1919.

There is no allegation in plaintiff's amended petition that defendant at any time authorized plaintiffs to vary the terms of the listing contract.

It is further to be observed that the listing contract (exhibit "A") is silent as to the compensation, and that plaintiffs do not allege in their amended petition that the defendant agreed that plaintiffs should have the excess over $32,000 as commission.

"In the absence of an agreement to that effect, a real estate broker employed to sell for a certain price is not entitled to any excess over such price that he may obtain and this rule has been held to apply even where he is authorized to sell for a certain price net to the owner." (9 C. J. 581.)

In the case of Louva v. Worden (Sup. Ct. N. D.) 152 N. W. 689, it is said:

"Where the owner lists real property for sale with a broker at a net price such broker in the absence of an express contract to that effect, is not entitled to receive as a commission all the selling price in excess of such list price, but is merely entitled to a reasonable commission not exceeding such excess."

In Mathaney v. Godlin (Ga.) 61 S. E. 703, it is said in the opinion:

"Where the owner agrees with brokers for them to sell property for a named amount 'net to him' such language will not be held to import by implication a contract to allow the brokers, as a fee or profit, all of the purchase price in excess of the sum so named."

It is further said in the opinion in the above case:

"If they (the brokers) show a case entitling them to recover such excess, it must be based upon a contract with the owner of the land; and if such a contract is not allleged in the declaration, the declaration must fall when attacked by general demurrer."

On the trial the plaintiff Richard testified that at the time of the listing contract it was orally agreed that the plaintiffs should have as their commission all sums which they could get for said land over and above $32,000. This testimony was incompetent. Where a broker's powers are embodied in a written contract, it cannot be varied by parol. 4 R. C. L. 256.

We do not think the verdict can be sustained in view of the pleadings and the evidence in the case.

Briefly stated, the evidence discloses that immediately after the plaintiffs entered into the contract of sale with the proposed purchaser, Moore, the plaintiff - Richard wrote the defendant, who was then visiting in California, that he had sold the land; that he had contract and money up in the Farmers & Merchants Bank for the same; and that he had sold it on the "term proposition".

In this letter the plaintiff did not disclose the name of the proposed purchaser.

We conclude that the defendant was justified in believing from the language of plaintiffs' communication that the plaintiffs had sold the land in accordance with the terms of the listing contract, and that $14,000 had been deposited in the bank, together with a contract providing for payment of the balance in accordance with the terms of the listing agreement.

It is not contended, as we understand it, that the contract between plaintiffs and Moore complied with the listing contract between plaintiffs and defendant. In fact the plaintiff Richard admitted in his testimony that he knew that his contract with Moore, the proposed purchaser, was not in accordance with his agreement with the defendant, Bateman, and that the reason why he did not notify Bateman of the terms of the Moore contract was that it was not necessary.

Where a broker, instead of procuring a person who is ready, able, and willing to accept the terms his principal authorized him to offer at the time of his employment, procures one who makes a counter offer more or less at variance with that of his employer the latter is at perfect liberty either to accept the proposed party upon the altered terms or to decline to do so. If he accepts he is legally obligated to compensate the broker for services rendered. Ann. Cas. 1913E, 778. But if he refuses he incurs no liability whatever for if he does not see fit to modify his original proposals the broker can lay no claim to his commissions until he produces a person who is ready, able, and willing to accept the exact terms of his principal. This is true, no matter how slight the variance may be between the contract tendered by the broker and that authorized by his employer. Even though the person produced by a broker is willing to purchase at the price set by the employer of the latter, if he is not willing to pay such price in the exact manner prescribed in the broker's contract of employment the latter is not entitled to his commission. 4 R. C. L. 313-314.

It is contended by counsel for plaintiff that the evidence is sufficient to establish that the proposed purchaser, Moore, was able to purchase the land on the terms of the listing contract.

The evidence discloses that when the defendant returned to Oklahoma from California, after receiving the plaintiff's letter informing him that the land had been sold on the "term proposition", and the money and contract deposited in the Farmers & Merchants Bank, the defendant went to that bank for the purpose of examining the contract referred to in the plaintiff's letter, but was unable to do so.

The cashier of the bank, of whom he made inquiry, declined to show him the contract. The cashier testified that he did not know whether the defendant saw the contract or not; that he remembered that Mr. Bateman came to see it; that the contract was between other parties and he thought he told Mr. Bateman that "We would have to have Mr. Richard instruct us to show it to him if he saw it."

The defendant having learned who the proposed purchaser was then went to Kansas and saw him in regard to the matter.

The proposed purchaser, Moore, testified with reference to his conversation with the defendant on that occasion, that he told Mr. Bateman that "I would be down in a few days; that I would see him in Hooker. That I would try to be prepared when I come down to do business according to the contract."

The contract to which Moore referred was the contract that he had with the plaintiffs on May 7, 1919, which contract, as before stated, was materially different from the listing contract.

Mr. Moore further testified that he went to Oklahoma, and saw the defendant on the 27th day of May, 1919, and told the defendant that he was ready to close the deal "according to my contract. The deal with Richard & Blake."

It is true he further testified that he was in a position to comply with the listing contract made between the defendant and the plaintiffs, and was in a position to put up the $14,000 as provided in the listing contract.

He testified, however, that he did not know he had that amount of money in the bank in Kansas on May 27th, but that his checks would have been paid if they had been presented there.

The cashier of the Farmers & Merchants Bank, where the contract between Moore and the plaintiffs was deposited, testified on behalf of the plaintiffs that Moore wanted to borrow money to close the land deal; that he would have loaned Moore some money on the plaintiffs' indorsement but not on Moore's own account.

The father of Moore testified on behalf of the plaintiffs that he would have assisted his son to raise the required amount necessary to comply with the listing contract; that his son was not able to take the land and pay for it without his help.

This character of testimony tended to negative the idea that Moore, the proposed purchaser, was financially able to purchase the land in accordance with the express terms of the listing contract.

We are unable to discover from a careful examination of the evidence disclosed in this record that the proposed purchaser Moore, was at any time financially able to comply with the terms of the agreement entered into by the plaintiffs and defendant.

In the case of Reynor v. Mackrill (Iowa) 164 N. W. 335, it is said:

"'Able' within the rule that to be entitled to commissions the broker must produce a customer able, etc., means that he must have the money at the time for the cash payment and not merely property on which he could raise it."

In its instruction No. 4, the court charged the jury that:

"And if you further find and believe from the evidence that the said property was placed with said plaintiffs for sale under an agreement that the defendant was to receive $32,000 net purchase price for the said property and that the plaintiffs were to have for their compensation whatever they could get for the property above that amount, then your verdict should be an amount equal to such excess, if any."

This instruction was not applicable to the facts disclosed by the evidence. In the agreement between the plaintiff Richard and the defendant, Bateman, there was no provision that the plaintiffs were to receive for their compensation whatever they could get for the property above the sum of $32,000. The plaintiffs did not contend that the agreement did so provide. If the plaintiffs had sold the land under their contract with Bateman for $35,000 they would not have been entitled to the excess in the absence of a contract to that effect. Their compensation in that event would have been a reasonable compensation based upon the sum for which the land was sold. 9 C. J. 581,

citing Snow v. McFarlane, 51 Ill. App. 448; Phillips v. Rudy, 146 Ky. 780, 143 S. W. 397 (holding that, where the broker secures a purchaser for a greater price than that fixed by the principal he is entitled to his commission on the whole price paid but not to the excess over the fixed price, any promise to give the broker such excess being without consideration); Allen v. Clopton Realty Co. (Tex. Civ. App.) 135 S. W. 242; Sandifer v. Foard County (Tex. Civ. App.) 134 S. W. 823; Turnley v. Michael (Tex. A.) 15 S. W. 912.

Upon the whole record we think the cause should be reversed and remanded with directions to grant the defendant a new trial.

By the Court: It is so ordered.

Note.—See under (1) 9 C. J. p. 581; (2) 22 C. J. p. 1110; (3) 9 C. J. pp. 595, 599.