## WILCOX v. REYNOLDS.

No. 22394.   Oct. 2, 1934.

Andrew J. Welch and Corn & Corn, for plaintiff in error.

W. P. Hickok, for defendant in error.

WELCH, J. The plaintiff, J. W. Wilcox, sued the defendant, A. T. Reynolds, in the district court of Dewey county, Okla., to recover damages for an alleged breach of contract to convey real estate. The trial court sustained a demurrer to the plaintiff's evidence and instructed a verdict in favor of the defendant and rendered judgment for defendant. Plaintiff appeals. The parties appear here as they appeared in the trial court, and will be referred to herein as plaintiff and defendant.

The defendant, as the owner of certain lands in Dewey county, entered into a contract with plaintiff as broker, whereby plaintiff agreed to undertake to procure a purchaser for such real estate. The agreement between the parties was evidenced by the following letters and telegrams:

"Nov. 26, 1927

"Mr. A. T. Reynolds,
  "Amhurst, Nebraska.

"Dear Sir:

"I have a few cash buyers who will buy good land at reasonable figures. Please quote me 'your low dollar' on the N. W. and the E. 1/2 of S.W.-30-18-17, W. I. M. Dewey County, Oklahoma, at your very earliest convenience.

"Yours very truly,
        "J. W. Wilcox."

"Nov. 30, 1927

"Mr. J. W. Wilcox,
  "Seiling, Oklahoma.

"Dear Sir:

"Acknowledging receipt of your letter of November 26, I will take $9,600 for N.W. and E. 1/2 of S.W.-30-18-17, W. I. M. Dewey

County, Oklahoma, net to me and you may offer it for $10,000, the difference to be your commission.

"Mr. James A. Harper of Oakwood, Oklahoma, has charge of the renting of the farm and Homer Compton is my renter. I do not know whether it has been rented for the coming season and it will have to be sold subject to Mr. Compton's rights under his lease.

"Advise me should you want me to write Mr. Harper relative to the renting of the farm.

"On looking up my present lease I find that it expires January 1, 1928. It is not likely that a new lease has been made.

"Yours very truly,

"A. T. Reynolds."

"Dec. 6, 1927

"Mr. A. T. Reynolds,

"Amhurst, Nebraska.

"Dear Sir:

"Would you consider $35 per acre net to you for your 240 acres down here? I sold two farms in the same vicinity as yours during the last month, one all level and capable of cultivation for $7,500, and Mr. Snodgrass bought the half section just a half mile east of your south 80 acres for $7,500. So you will understand, I am sure, why I cannot get more than $35 per acre. Please let me hear from you at once, as I have buyers coming in here next week.

"Yours truly,

"J. W. Wilcox."

"Dec. 17, 1927

"Mr. J. W. Wilcox,

"Seiling, Oklahoma.

"Dear Sir:

"In reply to your letter of the 6th instant, I have decided to accept $35 per acre net for my 240 acres near Lenora if sold by January 20, 1928.

"Yours very truly,

"A. T. Reynolds."

"Jan. 9, 1928

"Mr. A. T. Reynolds,

"Amhurst, Nebraska.

"When can you give possession of N.W. and E. 1/2 S.W.-30-18-17? How much cash rent? Would you take $5,000 loan back at 6% for one year? Answer immediately.

"J. W. Wilcox."

"Jan. 11, 1928

"Mr. J. W. Wilcox,

"Seiling, Oklahoma.

"I advised my agent, James A. Harper, Oakwood, Oklahoma, not to rent farm before January 20. Take this matter up with him. Will carry loan.

"A. T. Reynolds."

"Jan. 16, 1928. I am enclosing warranty deed, Oklahoma Form to be signed and delivered, together with abstract, to the First National Bank, Taloga, Oklahoma, subject to payment of $8,400 as follows: Cash payment $3,400; payment of $5,000 secured by first mortgage on the land described in the deed.

"I have contracted to sell your farm to a man in the Eastern part of the state who wishes the consideration in the deed to be made out either for $1 and other consideration or for $11,000, as he may desire to secure a state loan to take up the $5,000 held by yourself as soon as he can arrange to do so.

"In returning the deed please instruct the bank to deliver this deed when above payments or terms are made, and the abstract has been approved by my client."

"Jan. 27, 1928

"J. W. Wilcox,

"Seiling, Oklahoma.

"Partner in ownership objects taking excessive loan. Can it be made one-half selling price or all cash?

"A. T. Reynolds."

"Jan. 31, 1928

"Mr. J. W. Wilcox,

"Seiling, Oklahoma.

"Dear Sir:

"As per my wire to you of recent date, I own the farm near Lenora in partnership with R. L. Hart and he has raised the objection to taking back a loan in the amount of $5,000. He claims that it is excessive and might cause us trouble. In my wire I asked if the cash payment could be made at least one-half of the purchase price, but up to date have had no reply.

"A. T. Reynolds."

Jan. 31, 1928

"A. T. Reynolds,

"Amhurst, Nebraska.

"Send deed and abstract to First National Bank, Taloga with instructions. Will pay $4,200 cash, balance August 1.

"J. W. Wilcox."

"Feb. 4, 1928

"J. W. Wilcox,

"Seiling, Oklahoma.

"Will mail deed Monday to First National, Taloga.

"A. T. Reynolds."

"Feb. 14, 1928

"A. T. Reynolds,

"Amhurst, Nebraska.

"First National Bank of Taloga has not received deed which you wired you were

sending. Please rush it and abstract. Answer.

"J. W. Wilcox."

The above letters and telegrams constitute the entire agreement between plaintiff and defendant with relation to the sale of the land and communications exchanged between the parties relative to a proposed transfer of the title. The landowner refused to consummate the sale by delivery of deed as outlined in the letters and telegrams. Whereupon plaintiff addressed a letter to the defendant calling his attention to the various letters and telegrams, and demanding performance of contract on the part of the defendant. Upon the defendant's continued refusal to transmit conveyance of title, plaintiff instituted this action to recover damages in the sum of $2,400, being the difference between the price which the purchaser procured by plaintiff agreed to pay for the land and the net or list price which the defendant had agreed to accept for same.

Plaintiff's petition contains the following allegation:

"That on or about the 17th day of December, 1927, the plaintiff and defendant made a contract by the terms of which defendant employed plaintiff as his agent to procure him a purchaser for the above described land," etc.

The petition then contains allegations that plaintiff had complied with all of the terms of his contract to procure a purchaser, and had procured a purchaser ready, able, and willing to pay the price asked by the defendant for the land, and that through no fault on his part the defendant refused to fulfill his part of the contract by conveying the land at the price and upon the agreed terms, which refusal resulted in damage to the plaintiff amounting to $2,400, the same being the excess of the sale price over the price asked for the land by the owner.

The defendant's answer is in the form of a general denial, and, in addition thereto, after admitting that plaintiff was defendant's agent in the transaction, alleged that he refused to deliver the conveyance of title by reason of his discovery of fraud and concealment on the part of his agent, the plaintiff, in that plaintiff failed and refused to apprise him of the true value of the real estate and of the actual selling price of the same, and that the agent by such concealment had endeavored to obtain a wrongful and excessive profit and gain, in that he proposed to retain $2,400 of the sale price of the land, contrary to the agreement entered into between the parties. This is a statement only of the gist of the pleadings, and of the controlling theories and contentions of the parties.

There is no material conflict as to facts, the entire case resolving itself into a construction of the contract between the parties and of the law applicable thereto.

Plaintiff devotes a considerable portion of his brief to authorities of law which deal with cases where the relation of principal and agent does not exist, and makes some complaint of the action of the trial court in proceeding in the trial of the case upon the theory that plaintiff was the agent of the defendant in the transaction relating to the real estate. In view of the quoted allegations in plaintiff's petition in this connection, we find no fault in the conclusion of the trial court in that regard, nor in its rulings where that question was involved. The agency is here specifically alleged by plaintiff; and the authorities cited and the argument contained in plaintiff's brief on that point can avail plaintiff nothing in this cause.

It is plaintiff's theory and contention that the agreement between him and his principal amounted in law to an agreement that the owners would sell the land for $8,400 net, and pay the plaintiff as his commission all that he could obtain for the land in excess of that figure. He quotes on this point from the case of Arnold v. Bank (Wis.) 105 N. W. 828, as follows:

"According to the custom of the real estate trade, authority to find a purchaser at a net price to the seller is an agreement to pay as commissions all sums obtained by the agent in excess of the designated net price."

He also calls our attention to sections 5058 and 5059, C. O. S. 1921, as follows:

"Reasonable Stipulations Implied. Stipulations which are necessary to make a contract reasonable or conformable to usage are implied in respect to matters concerning which the contract manifests no contrary intention.

"Necessary Incidents Implied, When. All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded."

His brief also contains quotations of authorities supporting the general rule announced in the Arnold Case, supra. We do not question the value of those authorities where they are applicable, but they cannot

apply here, as will appear from the further analysis of the facts.

Plaintiff undertook to plead that there was an implied agreement on the part of defendant to allow plaintiff to retain all excess above $8,400 as his commission, in that a retention of such excess in such case was the customary commission retained by brokers in that vicinity under such contracts. He sought to prove by numerous real estate brokers residing within and without Dewey county that such was the prevailing custom.

It is defendant's theory that under the contract of employment between the parties, as evidenced by the first letter from defendant to plaintiff, plaintiff would have been restricted to a commission of $400 had he faithfully served the agency; that in no event would plaintiff be entitled to all of the difference between the $8,400 and his secret selling price, and that by reason of the breach of his duties as an agent, the plaintiff is entitled to no recovery.

The applicable rule as concerns the amount of compensation or commission which plaintiff would be entitled to under the undisputed facts in this case, is, in our opinion, governed by Bateman v. Richard, 105 Okla. 272, 232 P. 443. We quote from paragraph 1 of the syllabus thereof as follows:

"Where the owner lists real property with a broker at a net price, such broker, in the absence of an express contract to that effect, is not entitled to receive as a commission all the selling price in excess of such list price, but is merely entitled to a reasonable commission not exceeding such excess."

Whether or not the reasonable commission referred to therein would be restricted in this case to not to exceed the $400, as contended by the defendant, or $2,400 as contended by plaintiff, is immaterial, in view of our conclusion here reached. It is sufficient to say that in view of the decision of the Bateman Case, supra, it cannot be said here that there was an implied agreement between the parties for the plaintiff to retain the whole excess of the selling price over the list price of the land. There can be no implied agreement contravening fixed rules of law, nor can they be prevailed against by an asserted custom or usage.

Having concluded that, under the contract here, and under the rule of law adopted in the Bateman Case, supra, the plaintiff could have been entitled to receive no more than a reasonable commission, not exceeding the difference between the list price and the sale price of the land, we next consider the duty of the plaintiff as agent toward his principal, the defendant herein.

In 21 R. C. L. 828, we find the following rule announced, which we consider applicable to the facts in this case:

"In the exercise of good faith, skill and diligence, the agent is bound to keep his principal informed of all matters that may come to his knowledge concerning the principal's rights and interests. For instance, if after having received instructions to sell property on certain specified terms, the agent learns that more advantageous terms can be obtained, it is his plain duty, and he is under every moral and legal obligation, to communicate the facts to his principal, that he may act advisedly in the premises."

See, also, 9 C. J. 536-538, as follows:

"A broker must act in good faith and in the interest of his principal. This requires him to give the principal the benefit of his knowledge and advice, and to keep him informed of all material facts affecting the principal's interest which come to his knowledge."

In Eastburn v. Espella & Co., 215 Ala. 650, 112 So. 232, 53 A. L. R. 134, we find the following language of the court:

"The broker occupies a fiduciary relation to the owner he represents in the sale of the property, owes full fidelity in the service he undertakes, and upon his faithfulness depends his right to compensation. * * *

"It is the duty of a broker who is employed to sell property at a certain price to inform his principal of the fact that the property has become of enhanced value since the time when it was placed in his hands for sale. This has been placed generally upon the ground of the broker's duty to act in good faith toward his principal, but sometimes s'mply upon the ground that the principal is entitled to the benefit in his behalf of the broker's best judgment and efforts." (Note, 53 A. L. R. 137.)

"When the broker contracts to sell property at not less than a price named, and thereafter to his knowledge it has greatly increased in value, of which fact the owner is to his knowledge ignorant, he must inform the owner of the increase in value."

And in Porter v. Buckley (Ore.) 270 P. 905, in paragraph 3 of the syllabus, we find the following:

"Where agent undertakes to sustain dealings with his own principal, it must appear that the agent gave principal full information concerning his relation to the contract and the material circumstances." Held, broker failing in good faith toward his princ'pal, he cannot recover commissions.

In Boulenger v. Morison (Cal. App.) 264 P. 256, are found the following applicable principles of law:

"The law requires perfect good faith on the part of agents, not only in form but in substance; the obligation of an agent to his principal demanding the strictest integrity, good faith, and most faithful service.

"Where a real estate agent procured exclusive right to sell certain real estate for $30,000, but subsequently entered into a contract to sell it for a greater sum, held, ·that * * * he was required to disclose to principal the fact of increased price for which property was to be sold."

In the instant case the evidence is undisputed that the plaintiff did not inform the defendant of the fact that he had consummated a deal whereby the land was sold at a price of $10,800, but, on the contrary, plaintiff in his letter to defendant of January 16, 1928, informed the defendant that he had sold the land, subject to the payment of $8,400, to a man in the eastern part of the state. The purchaser did not live in the eastern part of the state, nor was the sale price $8,400. The plaintiff sought to induce the defendant to execute and deliver him a deed for the land, showing the fictitious consideration of either $1 and other good and valuable consideration, or $11,000, misrepresenting to the defendant the purpose of the suggested fictitious consideration, all of which could have been for no purpose other than concealing from the defendant the true sale price. The defendant was entitled to know the price for which the land was being sold, and to receive the full sale price, less a reasonable commission to the agent in accordance with the rules announced in the Bateman Case, supra. Under such circumstances, the defendant was fully justified in refusing to execute a conveyance of the real estate for a consideration less than the true price for which the land was being sold. The applicable rule under such circumstances is, in our opinion, aptly stated in 4 R. C. L., page 325, as follows:

"As a general proposition the faithful discharge of his duties is a condition precedent to any recovery upon the part of a broker for the services he has rendered his principal. Thus, his right to compensation is barred if he violated his duty to disclose to his principal any personal knowledge which he possesses relative to matters which are or may be material to his employer's interests, or if he acts adversely thereto, either for the purpose of aiding another or with the design of securing a secret profit for himself, or

otherwise advancing his own welfare at the expense of that of his employer."

It therefore may be seen that defendant's refusal to execute the deed was due to his discovery of the concealment of the sale price of the land on the part of the agent, which materially affects defendant's rights, and he was therefore fully justified in refusing to convey.

Finding no error, the cause is affirmed.

RILEY, C. J., and SWINDALL, OSBORN, and BAYLESS, JJ., concur.