38354. NORWOOD v. ROBIE.

DECIDED JULY 15, 1960.

*Daniel Duke,* for plaintiff in error.

*Cassandra E. Maxwell,* contra.

FELTON, Chief Judge. ■ The petition in this case is not subject to demurrer because it seeks to recover on an oral agreement for the performance of services by the plaintiff broker or because it does not allege that the transaction has been closed by a conveyance and payment of the purchase price. *Pierce v. Diech,* 81 Ga. App. 717, 723 (59 S. E. 2d 755) and cit. "The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." *Code* § 4-213. The terms stipulated by the owner alleged in the petition are not so indefinite as to render the broker's contract unenforceable. The description of the pre-existing obligation

to be assumed by the prospective purchaser was a "pre-existing first loan deed upon said real estate in the amount of ten thousand six hundred and 00/100 ($10,600) dollars, with said first loan being payable to holder thereof in monthly instalments of seventy five and 40/100 (75.40) dollars per month inclusive of principal and interest" is sufficiently definite to particularly identify the obligation in question. Since the petition specifically alleges the existence and duration of the broker's agency, the property listed for sale, the terms of compensation for the performance of the broker's services, the terms of sale stipulated by the owner and the procurement by the broker of a purchaser ready, able and willing to buy on such terms, and a refusal by the seller to pay the broker's commission in accordance with the contract, it is not subject to general demurrer. See in this connection *Wehunt v. Babb*, 84 Ga. App. 536, 538 (66 S. E. 2d 405) ; *Teague v. Adair Realty &c. Co.*, 92 Ga. App. 463, 465 (88 S. E. 2d 795).

■ The plaintiff's action is grounded on an express verbal contract allegedly entered into between the defendant and one E. Q. Adams, an agent of the plaintiff. The record contains the following testimony by Adams purporting to establish the existence of the contract of listing: "Q. Did you have occasion to receive an offer to sell the property located at 221 Florida Avenue, S. W.? A. That's right. Q. Now, is that the property of Mr. Elijah Norwood? A. That's correct. . . Q. Did you all at that time discuss how much you wanted to sell the house for? A. Well, he had a balance on the house owed the finance company, and he had some equity in the house he wanted out of it. Q. And did you discuss at that time how much equity he had in the house? A. Well, it was near $2,500 or $2,600 that he wanted out of the house. . . Q. (By the Court) What did Norwood tell you the terms were? A. Actually Norwood—he had $2,500 or $2,600 equity he wanted out of the property, and Mr. Robie and I—I had the figures on the balance what it was at the savings and loan association at that particular time, and after Mr. Robie worked out the commission and equity that would give us a sale price of thirteen thousand and something. . .

Q. Did you have that agreement you were to prorate the taxes?
A. I didn't mention the taxes."

In addition, the testimony of the plaintiff himself is as follows: "Q. Mr. Robie, in your conversation with Mr. Norwood on any of these trips, did you talk about sales price? A. Yes, we talked about the balance he owed. He had his book. Q. Balance he owed? A. Balance he owed on a mortgage which he agreed to transfer, and he had his payment schedule, and we also talked in terms of the total sales price which would be necessary to pay the brokerage commission and get his equity out. Q. Did he give you a price that he would sell this house for? A. Yes, he said that he would take—well, at one time he said he would take $2,500. Q. $2,500 for what? . . A. Net after paying the brokerage commission, and the Real Estate Commission instructs us when we list a piece of property like that the owner says, 'For my equity I want a certain figure,' we will add that figure to the net to this seller and arrive at the total sales price. Q. So, that wasn't the total price of the property. What was the total price of the property? A. $13,950 it would add up to. Q. And you talked about the assumption of the first loan deed on that? A. The assumption, yes, sir, of the first mortgage outstanding. He had a G. I. mortgage outstanding on the property. Q. The difference between that balance and the sales price is what you were talking about, a net equity to him? A. Including the difference between the balance he owed on the loan and the sales price would be the total cash coming out of which he would pay the brokerage commission. Q. That was your understanding with him? A. That's true. . . Q. (By the Court) What he's asking you is this. The night you went out there and discussed the terms of the listing with him, when you first went out there to see the property, was this $13,950 mentioned? A. $13,950 was the price that if you would take the commission, add to it the loan and his equity it would be $13,950. Q. (By the Court) I understand that. Did you mention what the total sale price would be? A. I didn't mention to him specifically what the total sales price would be. He simply stated how much money he wanted,

and the Real Estate Commission instructs us to add our commission."

From this and other evidence in the record, the jury might conclude that the defendant had listed his property with the plaintiff broker for sale at an amount of $2,500 or $2,600 net to him, but the evidence does not support the allegations as to the express terms of sale and compensation. The agreement between owner and broker for sale of the owner's property for a named amount "net to him" does not import by implication a contract to allow the broker, as a fee, the excess of the purchase price above the sum so named. *Metheney, Beasley & Koon v. Godin*, 130 Ga. 713 (61 S. E. 703).

The cause of action set forth in the petition was on an express contract and could not by amendment, either by pleading or by evidence unobjected to, be converted into an action for quantum meruit to fill the gap as to amount of compensation, as contended by the plaintiff. See in this connection *Davenport v. Pope*, 96 Ga. App. 799 (101 S. E. 2d 614); *Scott v. Scott*, 169 Ga. 290 (2) (150 S. E. 154); *Brannen v. Lanier*, 97 Ga. App. 30 (102 S. E. 2d 96). Here the evidence fails to make out the case laid in the petition and the court should have granted a new trial because the verdict is contrary to law and without evidence to support it. *Northwestern Fertilizing Co. v. Atlanta Nat. Bank*, 80 Ga. 629 (5 S. E. 793).

The court erred in refusing to grant the defendant's motion for a new trial on the general grounds. In view of this ruling, it is unnecessary that we consider various errors assigned in the special grounds of the amended motion.

*Judgment reversed. Nichols and Bell, JJ., concur.*