William C. ROBERTSON and Bill R.
Campbell, Appellants,

v.

Gilbert HUMPHRIES, Jr. and Marvin
C. Blubaugh, Appellees.

No. 58842.

Supreme Court of Oklahoma.

June 4, 1985.

Rehearing Denied Nov. 5, 1985.

Delmar L. Stagner, Oklahoma City, and Richard C. James, Stroud, for appellants.

Armstrong, Burns, Baumert & Cummings by J.E. Burns, Ponca City, for appellee, Gilbert Humphries, Jr.

Ross, McCarty & Rigdon by David Ross, Newkirk, for appellee, Marvin C. Blubaugh.

LAVENDER, Justice:

Appellants Robertson and Campbell, along with a third party, owned extensive oil leases in the southern part of Oklahoma. Robertson did banking business with appellee Gilbert Humphries, Jr. On one occasion Robertson told Humphries that he would like to sell the oil and gas leases. Robertson offered Humphries a commission for finding a buyer, but Humphries refused, stating that he would rather have a desired net sales figure set and would then make his money off the buyers. Robertson set this net figure at $100,000 plus substantial overriding royalties.

Humphries subsequently contacted appellee Blubaugh, who, with several other parties, agreed to purchase the leases. The terms set were $250,000 plus a ¹⁄₁₆th override. Humphries informed Robertson that he had obtained the desired $100,000 and requested written confirmation of power of attorney to accept an offer for the leases. Robertson complied with the request by telegram.

The leases were eventually transferred to appellee Blubaugh and his partners. Robertson and his partners received the ¹⁄₁₆th override. Humphries gave Robertson the $100,000 and Robertson again offered Humphries a commission, which Humphries refused, stating that he had made his off the buyers. Robertson never inquired, nor did Humphries volunteer, concerning Humphries' arrangements with the buyers.

On discovery of the actual terms of the purchase, Robertson and Campbell initiated the present action, alleging that Humphries and Blubaugh had fraudulently concealed the terms of the sale and retained the "secret profit."

After a lengthy trial to the court in this case the parties requested the entry of findings of fact and conclusions of law by the trial court. Upon the facts as found, the trial court concluded that Robertson and Humphries had entered into a net sale listing agreement under which the broker was to retain all above the net listing as a commission. The trial court, on this basis, concluded that, under the case of *Deming Inv. Co. v. Meyer*,[1] appellee Humphries had no duty to report the terms of the sale and that no fraud had occurred. Judgment was entered for Humphries and Blubaugh.

Robertson and Campbell appealed the trial court's judgment. On appeal they accept the trial court's findings of fact as correct, but argue that the conclusions of law drawn from those facts were erroneous. The Court of Appeals agreed, finding that the facts set out by the trial court gave rise to a duty on the part of Humphries to account to appellants as to the amount in excess of the net list, and finding a fraudulent breach of this duty. Appellees petitioned for certiorari for review of the Court of Appeals' decision. We have previously granted this petition.

Upon review of this case we also agree that the facts as found by the trial court do not support its conclusions of law. However, we reach this result on different grounds than the Court of Appeals.

I.

In its conclusions of law the trial court stated:

the property is being sold for a greater amount and that the excess will be retained as a commission for the services performed."

and:

"The agent commits no fraud or deception by not disclosing the amount of such excess".

---

1. 19 Okla. 100 91 P. 846 (1907). The trial court relied on the following language quoted from *Deming*:

 "We *see no reason* why a person may not report a sale of a piece of land to his principal for a certain sum when it is understood that

It appears evident to the court that both parties knew or contemplated that Humphries would sell the property for a greater figure than the $100,000.00. On February 3, 1975, when the $100,000.00 was paid to Robertson, he again mentioned a commission by offering 10%, but the statement that Humphries made was consistent with the statement that he made at the outset which was that he would make his from the buyers. Humphries testified that he told Robertson that he borrowed the money. Robertson received the $100,000.00 on February 3, 1975, and when he was leaving the bank, Humphries said, "Bill, you have sold them to me", and Robertson said, "I hope you made some money", and Humphries said, "I damned sure did." The conversations between the parties suggests to me that there was a tacit understanding between the parties that Humphries could retain that portion of the ultimate sale price that exceeded the net figure paid to Robertson of $100,000.00. The cases of *Bateman* [2] supra and *Wilcox* [3] supra state,

"Where the owner lists real property with a broker at a net price, such broker in the absence of an express contract to that effect is not entitled to receive as a commission all the selling price in excess of such list price but is merely entitled to a reasonable commission not exceeding such excess."

In the case at bar, there may be some question as to whether there was an express contract to the effect that the broker was to receive all above the net price, but it is my opinion that there is an implied agreement to that effect from the acts and statements of the parties, as aforesaid. (footnotes added).

 The source of the trial court's error is obvious. The *Bateman* and *Wilcox*

cases cited by the trial court recognize a well settled principle of law to the effect that, in the absence of an *express* agreement regarding the commission in a net list sale agreement, a broker is entitled to no more than a reasonable commission which may not exceed the difference between the gross price and the net.[4] The trial court here found that an express agreement as to the terms of the commission did not exist, yet found an agreement by implication that Humphries was to receive all funds in excess of the net list price agreed upon. This implication is directly contrary to the announced principle of law. For this reason the cause must be remanded to the trial court for a determination of a reasonable commission to be paid to appellee Humphries.

II.

 The trial court's finding that appellants failed to sustain a showing of fraudulent conduct on the part of appellee Humphries was based upon its conclusion that *Deming Inv. Co. v. Meyer* [5] applied to this case to relieve Humphries of any duty to disclose the true terms of the sale to appellants. *Deming* states that there is no duty to disclose when there is an understanding that the excess over the net list price is to be retained as a commission. As previously stated in the first part of this opinion, such an understanding may not be implied in the absence of an express agreement to that effect. Consequently, upon remand the trial court shall consider the issues raised by appellants' assertions of fraudulent misrepresentation and enter judgment accordingly.

III.

 The Court of Appeals, by order of March 27, 1984, amended its opinion in this

---

**2.** *Bateman v. Richard,* 105 Okla. 272, 232 P. 443 (1925).

**3.** *Wilcox v. Reynolds,* 169 Okla. 153, 36 P.2d 488 (1934).

**4.** In addition to *Bateman,* supra note 2, and *Wilcox,* supra note 3, see *Norwood v. Robie,* 102

Ga.App. 206, 115 S.E.2d 729 (1960); *Louva v. Worden,* 30 N.D. 401, 152 N.W. 689 (1915); *La Beaume v. Smith, Albin & Peay,* 247 S.W. 623 (Tex.Civ.App.1923) (opinion on rehearing).

**5.** Supra, note 1.

case to reflect that the trial judge who originally tried this action was to be disqualified to hear this case on remand. We disapprove of this action. It is apparent that the basis of this action was the result reached below rather than the possible existence of grounds upon which innate bias might be found to exist toward one of the parties on the part of the trial court. It is the duty and function of a trial court to reach an opinion on a question of law based upon the facts of the problem presented. The exercise of the court's duty may not be used as a basis for disqualification.[6]

Also, we would direct appellants to the proper procedure to follow in seeking the disqualification of a trial judge, which is set forth in Rule 15 of the Rules for District Courts.[7]

IV.

The opinion of the Court of Appeals is vacated in its entirety. The judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings as directed above.

SIMMS, C.J., DOOLIN, V.C.J., and HARGRAVE and KAUGER, JJ., concur.

OPALA and SUMMERS, JJ., concur in part, dissent in part.

HODGES and WILSON, JJ., dissent.

**6.** See *Oklahoma Company v. O'Neil,* 440 P.2d 978, 989 (Okla.1968).

**7.** 12 O.S.1981, Ch. 2, App.