## VAHLBERG v. CALLAWAY.

No. 33559. Feb. 7, 1950.

Rehearing Denied March 7, 1950.

215 P. 2d 543.

Hays & Powers, of Oklahoma City, for plaintiff in error.

Little & Hoyt, of Oklahoma City, for defendant in error.

CORN, J. This action was brought to recover the sum of $1,500 alleged to be due as a real estate broker's commission under an oral contract whereby defendant engaged plaintiff to find a purchaser for defendant's property. (Lots located in Oklahoma City.) The case was tried to the court without a jury.

Plaintiff alleged his employment in February, 1946, under an oral contract under which he was to find a purchaser at an agreed net price of $12,-000, the parties agreeing that the property should be listed for sale at $13,500; that plaintiff thereafter found one Wilson as a purchaser, but defendant and wife thereafter deeded the property to a third party who within a few days reconveyed the property to Wilson; that such transactions were the consummation of a single transaction, and a subterfuge to conceal the sale by defendant and thus deprive plaintiff of his commission.

Defendant's answer denied existence of any oral agreement, or that plaintiff had found a purchaser or had ef-

fectuated any sale of defendant's property. He further denied having sold the property to Wilson, but alleged the sale to the third party was in good faith.

Plaintiff, a real estate broker of long standing, offered evidence tending to establish the following facts: Early in 1946, he had occasion to talk with defendant, and inquired whether defendant still owned the property in question, defendant once having listed the lots with plaintiff a few years before. Being advised defendant still owned the property, plaintiff inquired the price and defendant stated he wanted $12,-000 net and that plaintiff could have anything above such figure as commission. Plaintiff then asked and received permission to erect signs on the lots, which plaintiff did, as well as to procure newspaper advertising of the property. A price of $13,500 had been decided upon and defendant was so advised. Plaintiff thereafter tried to interest various purchasers in the property. Plaintiff testified to having been in touch with Wilson by telephone and to having priced the property at the above figure, but he thought such price too high and stated that he would get in touch with plaintiff later, but plaintiff was unable to locate him to discuss the matter thereafter.

At about this same time Wilson held an option on other property in the area and was endeavoring to get the same zoned for business purposes. There was testimony that plaintiff discussed with Wilson the prospects for development in the particular area, as tending to make the property worth the price asked therefor. Being unsuccessful in his efforts to have the property upon which he held the option zoned for business, Wilson then turned to negotiating directly with defendant for purchase of his property.

In July plaintiff noticed the signs were down and called defendant. Upon learning the property was unsold he replaced the signs. That same evening defendant telephoned plaintiff and told him that he had an opportunity to sell and inquired whether plaintiff expected a commission, and was advised that if Wilson was the prospective buyer then plaintiff did expect his commission. The following day defendant told plaintiff he was not going to sell the lots if he had to pay a commission. Defendant and Wilson had been negotiating on a price of $13,000, but after hearing from plaintiff defendant advised the buyer the price would be $500 higher, and then refused to sell to Wilson at all. Wilson then inquired as to the possibility of defendant selling to someone else and, this being agreeable to defendant, Wilson secured the services of an attorney who called on defendant and asked if he would take $13,500 for the property. Defendant agreed to this and the attorney paid $500 down and defendant signed a contract for sale, after examination of title.

Cord Wilson, a witness for plaintiff, testified he never talked with plaintiff, personally, always having someone in his office call plaintiff, and through such calls he learned the price asked for the property. However, in July, plaintiff called him and told him defendant had said he was going to sell to Wilson, and that plaintiff would not "queer the deal." The witness made arrangements to purchase and sent his attorney to see defendant, but he called the deal off and told Wilson he would not sell him the property. Witness then asked if defendant would sell to someone else and defendant indicated he would consider doing this. Thereupon he asked another attorney to handle the transaction, gave him a check for the $500 earnest money and purchased a cashier's check for the balance ($13,-000) which was used to pay for the property. When he first learned the price asked for the property he was not interested, but later became interested in securing the property and told plaintiff he would appreciate it if he didn't "queer the deal," and plaintiff assured him he would not do this.

Other testimony was introduced corroborative of the oral contract for the listing of the property. There was testi-

mony by the attorney who handled the purchase for Wilson. This witness testified he was told defendant would not sell if he had to pay a commission and that Wilson told him to buy so defendant would not know the real party in interest, which he did. The purchase was made with a cashier's check obtained from Wilson, who also reimbursed him for the earnest money, and that the transaction was closed the same day Wilson called him; and he had no conversation with defendant as to whether he was buying for someone else.

Another witness, a bank official, testified that the Wilson Building Company, which was Cord B. Wilson, purchased a cashier's check for $13,000 on July 19, 1946, payable to defendant and wife.

Defendant testified that he gave permission for signs to be placed on the property and at a later time agreed with plaintiff that a price of $13,750 be put on the property, but that he never agreed to sell for $12,000 and did not give plaintiff a net listing allowing him to retain any amount received above this figure. Further, he did not recall any conversation with plaintiff, and when Wilson called him he stated that he had not talked to any real estate broker. When he talked with plaintiff in July, he was advised plaintiff claimed no commission, but he called and advised him differently the next morning and defendant thereupon stated he would not sell the property, and told Wilson's attorney this. When the attorney who handled the transaction called he expressed a willingness to sell if he had no other connections, and he thought he was selling to this attorney, and had he known the property was being bought for Wilson he would not have sold.

After hearing the evidence the court rendered judgment for plaintiff for $1,-500, interest and costs. Seeking reversal of the judgment, the defendant's assignments of error are presented under three propositions, all of which are based upon the alleged insufficiency of the evidence to establish: (1) existence of a contract as alleged by plaintiff; (2) that the sale by defendant to the attorney was fraudulently made by defendant; (3) that plaintiff was the procuring cause of the sale.

It is a fundamental rule that where a jury is waived in a law action, the trial court's findings are entitled to the same weight as the verdict of a properly instructed jury, and where there is any evidence, including reasonable inferences therefrom, tending to support the trial court's findings, the case will not be reversed by this court upon the ground of insufficient evidence. Oklahoma Ry. Co. v. Gaines, 200 Okla. 585, 198 P. 2d 411.

There was competent testimony from which the trial court found that, upon plaintiff's solicitation, the defendant set a price on the property in question and orally consented that plaintiff might advertise same for sale. It was unnecessary that his contract be in writing. 12 C.J.S., Brokers, §62. But defendant urges that, even assuming that such testimony was true, this was wholly insufficient to establish that defendant agreed that plaintiff should retain as his commission any amount received in excess of $12,000. To substantiate such argument defendant cites Wilcox v. Reynolds, 169 Okla. 153, 36 P. 2d 488, which approves the rule laid down in Bateman v. Richard, 105 Okla. 272, 232 P. 443, to the effect that listing commission, does not entitle the broker without express agreement as to the commission, does not entitle the broker to receive the difference between the net price and the selling price as his commission. Also, see 12 C.J.S., Brokers, §78, stating this to be the general rule.

However, the rule relied upon in the authorities cited clearly in inapplicable herein. The rule itself is subject to the limitation that it does not apply where there is an express agreement regarding the commission to be paid. Here there was evidence from which the

court found that the agreement and understanding of the parties was that plaintiff was to receive as a commission *only* the amount secured over and above the price demanded by defendant. Whether this might be a large amount or an insignificant sum, the parties thoroughly understood that such amount would represent the only commission plaintiff was to receive for his efforts.

Next, it is urged that there was no evidence to show defendant was guilty of fraud, or that he knew the attorney employed by Wilson was purchasing the property for him and in his behalf. We deem it unnecessary to consider this argument, other than to point out that after refusing to sell the property to Wilson defendant was advised by him that he needed the lots and was asked if he would sell to someone else. When he expressed a willingness to do this, Wilson suggested that they would proceed in this manner, and the same day the attorney hired by Wilson began negotiations with the defendant, presented him a contract of sale to sign at defendant's own price, and completed the transaction by making final payment with a cashier's check purchased by a building company which, in reality, was the buyer.

It is finally contended there was no evidence to show plaintiff was the procuring cause of the sale to Wilson. Supporting this contention defendant urges that the rule is that to be the procuring cause of a sale a broker must call the prospective buyer's attention to the property, and start the negotiations which culminate in the sale. Brewer v. Henry, 187 Okla. 617, 105 P. 2d 430; Bloch v. Bennett, 194 Okla. 602, 154 P. 2d 67, and cases cited.

Opposed to this argument plaintiff relies upon the rule announced in Fitch v. Braddock et al., 93 Okla. 78, 219 P. 703, and Johnson et al. v. Dill et al., 162 Okla. 125, 19 P. 2d 354, to the effect that a broker is considered the procuring cause if his efforts are the foundation upon which the negotiations which result in a sale are based. Also, see Petroleum Pipe Line Co. v. Lundy, 176 Okla. 319, 55 P. 2d 963, and Eastern Mach. Co. v. Conroy, 195 Okla. 37, 155 P. 2d 521.

Defendant argues that although Wilson learned from plaintiff's signs the property was for sale, and ascertained the price from plaintiff, nevertheless the evidence wholly fails to disclose that plaintiff's efforts started any negotiations between defendant and Wilson, who did not become interested in the property through plaintiff's efforts. In this connection, defendant insists that, even conceding that Wilson began negotiations because of plaintiff, nevertheless he abandoned any idea of purchasing this property in favor of other property he wished to develop, later beginning negotiations directly with defendant because of his inability to secure the other property.

Clearly, the view taken by defendant results from a misconception of the evidence upon which the trial court based his finding. It is true that the record does not reveal an unbroken line of negotiations resulting from plaintiff's first *contract* with defendant. However, the record does show that after first consulting with plaintiff, the buyer thought the price too high and turned his attention to other property. But, when this transaction failed he again turned to defendant's property and reopened negotiations upon the exact basis at first stated by plaintiff. And, further, both defendant and Wilson recognized plaintiff's participation in the matter to the extent that they desired to know whether plaintiff claimed a commission. There was absolutely no evidence that any knowledge of the property, other than that imparted by plaintiff, was conveyed to Wilson or in any manner induced him to consider the property.

Under this record we necessarily conclude that the evidence reasonably tends to support the trial court's findings that there was a valid contract of employment, that there was a sale

made to a purchaser within the terms of such contract, and that the plaintiff was the procuring cause of such sale.

Judgment affirmed.