**LEACH CORPORATION, a corporation,
Plaintiff in Error,**

v.

**Joseph W. TURNER d/b/a Joseph W. Turner
& Associates, Defendant in Error.**

No. 40320.

Supreme Court of Oklahoma.

Feb. 25, 1964.

Rehearing Denied March 24, 1964.

Sam P. Daniel, Jr., Lupardus, Holliman & Huffman, Tulsa, for plaintiff in error.

Gene C. Howard, Frederick A. Smith, Tulsa, for defendant in error.

IRWIN, Justice.

Joseph W. Turner, d/b/a Joseph W. Turner & Associates, hereinafter referred to as plaintiff, commenced this action against Leach Corporation to recover a sales commission allegedly due under the terms of a written sales representative agreement. The basis for plaintiff's action is that he was the sole and procuring cause for defendant being awarded a contract to sell motor generators to Convair, a division of General Dynamics Corporation.

Defendant defended the action on the grounds that the sales representative agreement had been lawfully terminated prior to the consummation of the sale to Convair and under the terms of the sales representative agreement, plaintiff was not entitled to a commission.

The jury returned a verdict in favor of plaintiff and judgment was rendered accordingly. Defendant perfected this appeal from the order overruling its motion for a new trial.

## FACTS

The record discloses that in January, 1956, plaintiff and defendant entered into a sales representative agreement which provided that plaintiff would receive a certain commission on sales procured by plaintiff. This agreement remained in force and effect until August 24, 1959, the effective date of its termination. Prior to August 24, 1959, plaintiff secured on behalf of defendant, the right to submit a bid on 24 generators which Convair proposed to purchase and defendant submitted its bid prior to August 24, 1959. Subsequent to August 24, 1959, defendant and Convair negotiated the purchase contract and in October, 1959, a contract for the sale of 17 generators was finally consummated.

The evidence surrounding the negotiations for the submission of the bid by defendant to Convair and the consummation of the contract of sale is as follows.

Plaintiff testified that after the sales representative agreement was executed, he contacted Convair and in the early part of 1957,

defendant was awarded a contract to sell 5 generators to Convair; that plaintiff, on behalf of defendant, contacted Convair at least once every month while the sales representative agreement was in force; that in December, 1958, plaintiff secured, on behalf of defendant, the right to submit a bid on Convair's proposal to purchase more generators; that this proposed purchase was changed in January, 1959, and became inactive.

Plaintiff further testified that he called on Convair on June 26, 1959, and was advised that there had been no change in the status of the earlier proposal; that on July 15, 1959, he again contacted Convair and was advised that new proposals for 24 generators had been mailed to prospective bidders and that bids would have to be received by Convair on or before July 20, 1959; that no proposal had been sent to defendant; that plaintiff requested from Convair's new purchasing agent that time be extended to permit defendant to submit a bid; that the purchasing agent declined to extend the time beyond July 20, 1959; that plaintiff then contacted higher officials of Convair and time was extended to July 24, 1959, for defendant to submit a bid on the 24 generators; and that no other company was permitted to submit a bid after July 20, 1959.

The evidence discloses that on July 15, 1959, after plaintiff was successful in securing an extension to July 24, 1959, for defendant to submit a bid, plaintiff called defendant on the telephone and advised defendant of the proposal and also mailed to defendant, via airmail, special delivery, a bid proposal. On July 24, 1959, defendant submitted its bid to Convair by teletype which was followed by detailed information.

Plaintiff further testified that after July 24, 1959, he frequently contacted Convair and on August 20, 1959, Convair's purchasing agent advised him that defendant would be awarded the contract but the purchase order would not be prepared for some time because of other pressing business; that he called defendant's sales manager and conveyed this information to him; that the

only information needed after the bid was submitted was technical engineering data, although several changes were made in the specifications and the number of generators to be purchased was reduced from 24 to 17; that the final purchase order was prepared on September 14, 1959, and signed by Convair's purchasing agent on September 15, 1959, and approved by the U. S. Air Force on October 2, 1959.

The new purchasing agent of Convair corroborated the testimony of plaintiff except he denied he told plaintiff that defendant would get the contract. The former purchasing agent, who was instrumental in getting an extension of time for defendant to submit a bid at the request of plaintiff, substantiated the testimony of plaintiff.

Defendant's sales manager testified that his company had submitted a bid on the generators and that he personally contacted Convair about the proposal, the change in the specifications, etc., and that during the employment of plaintiff, Convair did not advise him that defendant would be awarded the contract.

### CONTENTIONS

Defendant contends that plaintiff's right to a commission is dependent upon the sales representative agreement between the parties; that under the sale representative agreement, plaintiff was to procure orders for defendant's products and the order for which plaintiff seeks a commission was not procured prior to the termination of the sales representative agreement and the question is not whether plaintiff was in some part the procuring cause of such sale, but whether under the contract plaintiff is entitled to a commission on sales made after the termination of the contract. In this connection the trial court, in effect, instructed the jury that unless plaintiff was the procuring cause of the sale, plaintiff would not be entitled to a commission. Defendant contends this instruction was erroneous in that it creates new terms in the sales representative agreement which the parties themselves did not see fit to place in the contract.

Plaintiff contends that he had performed all sales efforts necessary to the consummation of the order and sale prior to the termination of the sales representative agreement by obtaining bid rights for the defendant and is entitled to a commission even though the sales contract may have been finally consummated after the termination of the sales representative agreement. In this connection plaintiff urges that he is entitled to the commission if he was the procuring cause of the sale by his sales efforts while the sales representative agreement was in force and that the procuring cause of a sale is a question of fact for the jury and the jury has resolved this question in his favor.

### CONCLUSIONS

Both parties agree that the law applicable to real estate brokers and their principals, concerning the right to commissions, is applicable to sales representatives and their principals in contracts for the sale of personal property on a commission basis. However, an examination of the contentions heretofore set forth, clearly show that the parties either disagree as to applicable law or the terms of the sales representative agreement.

In Aetna Life Insurance Co. v. Home, 193 Okl. 478, 145 P.2d 189, we held the right of a real estate broker to recover a commission for his services depends upon the contract between the seller and the broker, and in an action by real estate broker to recover a commission upon a certain contingency, he must plead and prove that the contingency has happened, or was prevented from happening by the willful and fraudulent act of the principal in violation of his own undertaking.

In the instant action, plaintiff does not plead that the sales representative agreement was terminated because of the willful and fraudulent conduct of defendant or that it was not terminated according to the termination provision of the agreement. However, the agreement contains no provision whatsoever, which governs or has reference to commissions on sales

which plaintiff may have been the procuring cause but which were finally consummated by defendant after the termination of the agreement. It necessarily follows that neither the defendant nor the plaintiff can rely on the specific provisions of the sales representative agreement to sustain their cause. Therefore, we must construe said agreement in light of the principles of law applicable to such transactions. See Baker v. Tulsa Building & Loan Ass'n, 179 Okl. 432, 66 P.2d 45.

In considering these principles of law we should be cognizant of defendant's theory which seems to be that even though plaintiff may have been the procuring cause in securing defendant the right to submit a bid on the generators, plaintiff was not the procuring cause for consummation of the sales contract as it was through defendant's efforts that the engineering was changed to meet the changed specifications, the negotiations completed, and the sales contract finally consummated for the sale of 17 generators instead of 24 generators as in the original bid proposal.

In Shelton v. Tapley, Okl., 329 P.2d 672, we said:

"The question in an action to recover a realtor's commission is whether the realtor was the procuring cause of the sale. To meet this test the agent must have called the purchaser's attention to the property and started negotiations with the owner which culminated in a sale. Vahlberg v. Callaway, 202 Okl. 504, 215 P.2d 543. But it is not essential that the real estate agent complete the negotiations, so long as he procured them. Artlin Realty Co. v. Glass, 170 Okl. 588, 41 P.2d 471; Bohnefeld v. Wahl, 97 Okl. 48, 215 P. 777. The jury in this case was instructed that plaintiff must have been the procuring cause of the sale to be entitled to the commission, and, in an action of this nature, where there is any evidence reasonably tending to support the jury's conclusion, it will not be disturbed on appeal, Bock v: Sypert, 205 Okl. 504, 239 P.2d 398;

Fitch v. Braddock, 93 Okl. 78, 219 P. 703; Roberts v. Markham, 26 Okl. [387] 397, 109 P. 127. The evidence heretofore noted is sufficient to sustain the jury's verdict."

In Artlin Realty Co. v. Glass, 170 Okl. 588, 41 P.2d 471, which was quoted with approval in the Shelton case supra, we held a broker will be regarded as the procuring cause of a sale if his efforts are the foundation upon which the negotiations resulting in a sale are begun.

In the case of Yarborough v. Richardson, 38 Okl. 11, 131 P. 680, we set out the following rule of law:

"If, after the tract of land or realty is placed in the agent's hand for sale, a sale is brought about by his exertions, he will be entitled to his commission; or if the agent introduces or discloses the name of the purchaser to the vendor for such purpose, and through such introduction or disclosure negotiations for the sale of the property are begun and then effected by the vendor, the agent is entitled to his commission."

In Payton v. Maupin, 202 Okl. 574, 216 P.2d 331, this Court held:

"Where a brokerage contract created an agency for thirty days, and provided compensation for the broker in the event such broker should produce a responsible party ready, able and willing to purchase, held that the securing of such responsible party within the thirty days and the introduction of said party to the owner was a sufficient compliance with the brokerage contract, although a written contract was not entered into between the owner and purchaser until the thirty-seventh day."

We can only conclude that the trial court did not err in instructing the jury that plaintiff had to be the procuring cause of the sales contract to Convair before he would be entitled to a commission. We further conclude that the evidence reasonably tends to support the jury's conclusion that plaintiff was the procuring cause of the

sale and entitled to a sales commission under the sales representative agreement as that agreement is construed in light of the principles of law applicable to such transactions.

Judgment affirmed.