STATE of Oklahoma ex rel. DEPARTMENT
OF HIGHWAYS of the State of
Oklahoma, Appellant,

v.

Jack D. SHARPENSTEEN, d/b/a S & S Ma-
terials Company and Richard La-
verne Timmons, Appellees.

No. 47164.

Supreme Court of Oklahoma.

July 22, 1975.

Floyd W. Taylor, Gen. Counsel, Oklahoma Dept. of Highways, Oklahoma City, for appellant.

Ray H. Wilburn, Tulsa, for appellees.

DAVISON, Justice:

This is an appeal by State of Oklahoma, ex rel. Department of Highways of the State of Oklahoma (plaintiff below) from a judgment rendered, in a trial to the court, in favor of Jack D. Sharpensteen, d/b/a S & S Materials Company, and his employee, Richard Laverne Timmons (defendants below), denying plaintiff any recovery in its action against defendants for damage to a bridge, allegedly caused when Timmons drove a tractor truck with a dump trailer, owned by Sharpensteen, upon the bridge and a span of the bridge collapsed.

At the time of rendering judgment for the defendants, the trial Judge stated that the plaintiff had failed to sustain the burden of proof to show negligence on the part of the driver of the truck and trailer, and found from the evidence that the truck and trailer were not operated in such a manner as to cause damage to the bridge. This statement, in abbreviated form, was incorporated in the Journal Entry.

Plaintiff contends it was reversible error for the trial court to enter judgment for the defendants based on a finding that plaintiff had failed to show negligence in the operation of defendant's vehicle. It is plaintiff's position that it was not required to show negligence on the part of the defendants to establish a cause of action and a right to a judgment against them for damage to the bridge.

Plaintiff bases its right to recover damages upon the first paragraph of 47 O.S. 1971, Sec. 14–114(b), of the Highway Safety Code, and *specifically* upon the portion herein emphasized. It provides in pertinent part that the driver, owner, and some other described parties responsible for a vehicle being upon the highways, " * * * *shall be responsible for all damages* which said highways, including *the bridges,* pavement and all other public property thereon, *may sustain * * * as a result of the negligent or improper operation of said vehicle * * *.*" (emphasis ours).

Plaintiff interprets the above language, and particularly the words "or improper", as constituting strict liability imposed by statute, which does not arise from negligence or any other common law cause of action. Plaintiff argues that the above portion of Sec. 14–114(b), is comparable in legal effect to 52 O.S.1971, Sec. 296, which prohibits products from oil and gas wells being allowed to flow over the land, and 2 O.S.1971, Sec. 748, which makes a railroad liable for damages sustained by fire originating from operating its road. Plaintiff cites *C. L. McMahon, Inc. v. Lentz,* 192 Okl. 153, 134 P.2d 563, declaring Sec. 296, supra, to be a penal statute and the degree of care exercised by the well operator to be irrelevant. Plaintiff also cites Midland Valley R. Co. v. Barton, 191 Okl. 359, 129 P.2d 1007, relative to Sec. 748, supra, holding the railroad liable for damages resulting from fire whether "due to negligence or not."

We do not agree with plaintiff's contention. The above mentioned statutes set forth a standard of care applicable to a defined danger or specify safeguards against recognized dangers. They are not comparable in legal effect to the part of Sec. 14–114(b) under discussion. That portion of the statute clearly makes responsibility for the damages depend on "negligent or improper" operation of the vehicle. Obviously, when the statute

makes liability for damages depend on "negligent" operation, then proof of negligence is necessary to a recovery of damages.

This leaves for determination the meaning of "improper" when applied to operation of a vehicle. Our research reveals (42 C.J.S. Improper pp. 413, 414) that "improper" means "not fitted to the circumstances; not suitable; * * * unfit; wrongful," and that its adverb "improperly" is described as follows, "Used in its broad sense, the term implies conduct of which a man of ordinary and reasonable care and prudence would not have been guilty, under the circumstances; * * *." It has also been held equivalent to "negligently." *Cairnes v. Hillman Drug Co.*, 214 Ala. 545, 108 So. 362.

 When considered in the light of these descriptive words, it will be seen that the words "improper" and "negligent" have the same, or practically the same meaning, particularly when used in the context of operating a motor vehicle. Neither specifies a recognized danger or defines the care to be exercised in a described situation. They could be applied to enumerable situations. They do not, as urged by plaintiff, impose "strict liability."

Plaintiff also contends that the trial court's findings of no negligence on the part of defendants, *supra*, and resolution of the issues in favor of defendants was "clearly in conflict with the evidence, palpably erroneous and in direct disregard with the laws of nature."

This contention, under the circumstances, is in part or indirectly a request that we examine and weigh the evidence.

 In this connection we have repeatedly held that where a jury is waived in a cause triable to a jury and the cause is tried to the court, the findings of the trial court are entitled to the same weight and consideration that would be given to the verdict of a jury, and a judgment based on conflicting evidence which reasonably tends to support the judgment will not be disturbed on appeal. The Supreme Court will not reverse the finding of the trial court for insufficient evidence if there is any evidence, including any reasonable inferences therefrom, tending to support the findings. *Wattie Wolfe Company v. Superior Contractors, Inc.*, Okl., 417 P.2d 302, and *West v. Independent School District No. 2, McClain County*, Okl., 412 P.2d 185.

The record in this case consists of over 500 pages of testimony and some 60 exhibits consisting of photographs, drawings and reports. Each side had an expert witness who testified regarding his interpretation of the physical facts and his conclusions as to what caused the bridge span to fall.

The subject bridge was a steel truss type bridge, with a clear roadway width of 15 feet, consisting of a number of 150 foot spans over the Arkansas River. It was constructed in 1911 with a wood floor, which was replaced in 1956 with a concrete floor. The clearance height from the floor to the overhead steel portal was 14 feet 9 inches.

The tractor truck and dump trailer rig was about 50 feet feet long, had a total empty weight in excess of 24,000 lbs. and a height of about 10 feet. The dump trailer *bed* was constructed of aluminum, was 30 feet long and weighed 5500 lbs. This trailer *bed* did not rest upon a conventional truck frame, it retained its shape by means of external ribs, and was supported at the extreme rear by tandem wheels. It did rest (to some extent) upon arms, or what appeared to be a yoke, which was hinged to the bottom of the bed forward of the trailer rear wheels and fastened forward to the "fifth wheel" on the truck. A hydraulic hoist in the area of the fifth-wheel would raise the front end of the bed *free* of the mentioned arms or yoke except where it was attached by the above described hinge. Extending down toward the ground from the yoke, about midway thereof, were legs, probably for support when the trailer was free of the truck.

There is no question that the *truck* was driven off of the west approach to the bridge and on to the bridge, when the west end of the bridge floor broke and the steel framework collapsed, precipitating the truck (with the trailer still attached) to the bed of the river, where it came to rest at a sharp angle with the trailer. The rear wheels of the trailer remained aloft on the lip of the approach with the bed extending downward at about a 45 degree angle, and the hydraulic hoist in extended position. The front end of the dump bed was pushed into the top of the truck cab.

Plaintiff introduced evidence calculated to show the truck was driven upon the bridge with the dump bed partially elevated so that the front of the bed struck the overhead steel portal (which extended between the junction of the tops of the vertical steel posts and the sloping batter posts on each side of the bridge), causing the portal to bend forward and pull the above described posts inward whereby they lost their ability to support the bridge and the truck-trailer rig, and the bridge span broke and collapsed. Plaintiff argues the extended hydraulic hoist, and the bent portal (which came to rest on and between the truck cab and trailer bed) are positive proof of the correctness of its contention.

Defendants' evidence (including testimony of the driver of the truck) was that this truck and trailer was traveling empty, as the second truck in a group of three trucks, at about 1:30 A. M., when they approached the west end of the bridge; that the driver stopped the truck on the approach to the bridge for about 30 to 60 seconds to allow the first truck to cross over and clear the bridge; that the trailer bed was not elevated; that this style or combination of truck and dump trailer was not driven with the bed elevated, because of great instability (when driven in that condition) due to the nature of the connection between the truck and trailer; and that the procedure necessary to raise the trailer bed ruled out any possibility of the bed being elevated through accident. The driver of the truck testified he did not raise the bed while waiting on the approach for the lead truck to clear the bridge; that he then proceeded on the bridge about 15 feet, when he heard a loud pop and put on his brakes; and the bridge collapsed and almost instantaneously the truck was in the water.

Defendants also introduced evidence, supported by testimony of their expert witness, that the bridge was old (built in 1911), rusted, in poor repair, and the superstructure was rated only in "fair" condition by plaintiff's own inspectors; that the provision for expansion built into the bridge had been exhausted; that "brittle fractures" were present in the superstructure; that several "diagonals" were poorly attached because of rust and one was fractured; that the defects caused the bridge span to collapse, precipitating the truck in the water and the superstructure atop the cab and forepart of the bed.

It was upon this conflicting evidence that the trial court determined the truck and trailer were not operated in such a manner as to cause damage to the bridge, and upon which the court resolved the issues in favor of the defendants.

██ We find there is evidence including reasonable inferences therefrom supporting the findings and judgment of the trial court.

Affirmed.

WILLIAMS, C. J., HODGES, V. C. J. and IRWIN, BERRY, LAVENDER, BARNES and DOOLIN, JJ., concur.

SIMMS, J., concurs in result.