ACME GLASS, a division of Sherwin-Williams Company, Appellee,

v.

E. V. COX CONSTRUCTION COMPANY, Appellant.

No. 49475.

Supreme Court of Oklahoma.

Dec. 6, 1977.

Rehearing Denied March 1, 1978.

John B. Hayes, Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellant.

Randle L. Graham, Oklahoma City, for appellee.

WILLIAMS, Justice.

This appeal is from a judgment of the trial court rendered after a hearing on opposing claims, as against each other, of a contractor and sub-contractor on a project for the construction of a five-story office building of unusual design. The walls of the building were almost entirely of glass, and this circumstance admittedly created special problems in the construction process.

The contractor was E. V. Cox Construction Company; the sub-contractor, under Cox, was Acme Glass, a division of Sherwin-Williams Company. We shall refer to these parties hereinafter as Acme and Cox.

Before construction was completed the mortgage holder instituted foreclosure proceedings against the owner and the property was sold at sheriff's sale after being in the possession of a receiver for some time. Acme and Cox, as holders of materialman's liens, were among the defendants in the foreclosure proceedings. Although the claims of Acme and Cox, as against each other, arose during the course of those proceedings, the action between these parties was plainly an action on contract in which the issues were made up by Acme's cross-petition against its co-defendant Cox, Cox's answer thereto, and Acme's reply.

As above suggested, Cox was the prime contractor on the project. Acme had a $140,000 sub-contract, under Cox, for the furnishing and installation of all glass and glazing. In the mortgage foreclosure action above-mentioned, Acme by cross-petition against Cox, sued for $24,934.00 which allegedly remained unpaid on the contract and an additional $3877.80 for glass breakage it attributed to Cox. In the answer, Cox in effect admitted the existence of the contract; it denied responsibility for the glass breakage and pleaded as set-offs eleven items in the total amount of $24,934.00, the exact amount for which Acme had sued it on the contract.

In a stipulation made immediately prior to trial, Cox agreed that one of the items pleaded as a set-off was erroneously computed, that the correct total amount of the set-offs was $19,379.49, and that if Cox were credited with all of the set-offs claimed, there was still due to Acme on the sub-contract the sum of $5554.56.

Trial was to the court without a jury, after which judgment was entered for Acme for $24,934.00 and an agreed attorney fee. Acme's claim for glass breakage and Cox's claimed set-offs were denied. Only Cox appealed, arguing in effect that the trial court erred in failing to allow all, or some, of the set-offs claimed by Cox.

The case was assigned to the Court of Appeals, Division No. 1, which promulgated an unpublished opinion reversing the judgment and remanding the cause for a new trial. On application of Acme, this Court granted certiorari on November 7, 1977.

The record before us shows that the eleven items of damages or loss claimed by Cox as set-offs fall into three general classes: (1) those resulting from Acme's alleged delay in performance; (2) those resulting from leakage caused by Acme's alleged improper performance; (3) those resulting from Acme's refusal to perform certain work allegedly required of it under the sub-contract.

After a careful review of the testimony and exhibits in the record, we find conflicting evidence as to all three classes. As to class (1) the set-off claimed amounted to about $9,000 as costs of additional supervision and additional utility costs allegedly resulting from a delay attributed to Acme. A witness for Cox testified that the amount of the claim was computed on the basis of a delay of four months. However, on cross-examination the same witness admitted that there was a delay of three months in procuring the delivery of structural steel to the job site, and a further delay of about three weeks in procuring certain materials to be used in the construction of precast brick panels, both of which were caused by the prime contractor and not by Acme. It was shown that the structural columns had to be completed before Acme could start the actual installation of the glass walls and glazing.

As to class (2), the record shows that much of the damage from leakage occurred during the delay above referred to. A witness for Cox testified that the leaks resulted from improper performance, or failure to perform, by Acme. Most of the many small leaks were attributed to improper caulking by Acme, or failure to install a "closure strip" around some of the "perimeter window wall units". Witnesses for Acme testified that Acme properly repaired all leaks that were called to their attention. They

further testified that there were substantial leaks in the roof of the core (center) of the building, not attributable to Acme, which caused most of the damage. Assuming, as the trial court remarked on the occasion of pronouncing judgment, that "some minor portion" of the damages might be attributable to Acme, the record discloses no basis, mathematical or otherwise, of apportioning the damages as between Cox and Acme. In this connection, it is well settled that the burden of proof in regard to the set-off was upon Cox. 12 O.S.1971, Sec. 273; *Pine v. Bradley*, 187 Okl. 126, 101 P.2d 799; 20 Am.Jur.2d Counterclaim, Recoupment and Set-off, Sec. 152.

As to class (3), the set-off claimed was for the expenses of Cox in purchasing and installing certain metal plates which were allegedly the responsibility of Acme, and which Acme refused to install. These plates were necessary "to tie down the glass walls into". Again, the evidence is in conflict. Witnesses for Cox testified that the installation of the plates was the responsibility of Acme. For Acme, there was testimony that the general contractor (Cox) was responsible for the plates on the inside of the concrete slab to which they were attached, that Acme was responsible for those on the outside, and that Acme did install all of those for which it was responsible.

It may be noted, also, that the trial of this matter was made much more difficult, especially for the trial judge, because there was no written sub-contract between the parties. Such a contract was prepared by Cox and delivered to Acme, which refused to sign and return it, for reasons immaterial to this appeal. The parties had worked together on another construction project for the same owner and apparently felt that no difficulties would ensue. The record shows that as problems would arise during the construction, they would be solved at conferences between the parties on the job, usually upon the basis of what was the accepted general practice in the industry.

In a jury-waived action of legal cognizance, it is not the prerogative of the appellate court to weigh the evidence and decide in which party's favor the evidence preponderates, but in such case the judgment will be affirmed if there is any competent evidence reasonably tending to support it. *Leveridge v. Notaras*, Okl., 433 P.2d 935; *Smith v. Clark*, Okl., 315 P.2d 960. Where jury is waived, a judgment based on conflicting evidence which reasonably tends to support it will not be disturbed on appeal. *West v. Independent School District No. 2, McClain County*, Okl., 412 P.2d 185.

The evidence in this case is squarely in conflict on all pertinent questions and we cannot say that the judgment is not reasonably supported by any competent evidence. For these reasons the trial court's determination as to the weight of the evidence must stand.

The decision of the Court of Appeals is vacated and the judgment of the trial court is affirmed.

LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.