Kenneth McDONALD, Trustee in Bankruptcy for William C. Robertson, and Bill R. Campbell, Appellees,

v.

Gilbert HUMPHRIES, Jr., Appellant.

No. 72875.

Supreme Court of Oklahoma.

June 19, 1990.

As Corrected on Denial of Rehearing April 23, 1991.

J.E. Burns, Ponca City and Delmar L. Stagner, Oklahoma City, for appellant.

Richard James, Stroud, for appellees.

KAUGER, Justice.

The issues presented are: 1) whether this cause is governed by the law of the case in *Robertson v. Humphries*, 708 P.2d 1058, 1060 (Okla.1985) which held that, if there is not an express agreement regarding the commission in a net list sale agreement, a broker is entitled to no more than a reasonable commission which cannot exceed the difference between the gross and the net sale price; 2) whether a party, unaware of the true terms of a contract, must testify that he/she would have accepted the more favorable terms in order to demonstrate damage resulting from fraudulent representations; and 3) whether a sellor, who makes false representations to a broker and potential purchasers concerning the state of oil and gas leases, is barred from seeking equitable relief. We find that: 1) the cause is governed by the holding in *Robertson v. Humphries*, 708 P.2d 1058, 1060 (Okla.1985) (*Robertson I*), that, in the absence of an express agreement regarding the commission in a net list sale agreement, a broker is entitled to no more than a reasonable commission not to exceed the difference between the gross and the net

sale price;[1] 2) testimony that a party would have chosen the true terms of a contract is unnecessary to show damages in an action based on fraud if it is unreasonable to conclude that the party, advised of the facts, would have accepted materially less favorable terms; and 3) the broker's acquiesence in inequitable conduct bars his invocation of the "clean hands doctrine" as a defense.

 Because the appellee's,[2] William C. Robertson's (Robertson/sellor), claim was unliquidated, the issue of ministerial additure of interest to the judgment is not addressed.[3] The appellant's, Gilbert Humphries', Jr. (Humphries/broker), unsupported argument that the trial court erred in refusing to consider the value of a 1/16 override retained by the sellor in determin-

ing a reasonable commission is not considered.[4]

## FACTS

This is the second appeal arising from the same set of facts.[5] Robertson owned leases in Stephens, Jefferson, and Cotton counties, Oklahoma, covering over nine thousand surface acres, and approximately five thousand mineral acres. Late in 1974, Robertson asked Humphries, a banker and real estate agent in Tonkawa, Oklahoma, to sell the leases. The parties disagree over whether a net sale agreement existed. However, both parties agree that under the original agreement, Robertson was to receive at least $100,000.00, and to retain a 1/8 override [6] with a 1/4 back-in [7] after payout.

1. The concerns expressed in the dissent would require that we overrule *Robertson v. Humphries*, 708 P.2d 1058, 1060 (Okla.1985) (*Robertson I*). We decline to do so, and instead reaffirm our holding.

2. Since the original action was filed, Robertson has filed bankruptcy. The other appellees in the instant cause include Kenneth McDonald, the trustee in bankruptcy, and Bill R. Campbell, a co-owner of the subject leases. The appellees are referred to collectively as Robertson.

3. Title 23 O.S.1981 § 6 provides:

 "Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

 Robertson concedes that his petition in error was untimely to raise the issue of whether Humphries' fraud precluded the award of a commission. However, he argues that he may still raise the issue of whether interest was payable under 23 O.S.1981 § 6. Section 6 controls, as the specific statute referring to prejudgment interest, over § 21, which provides the general rule for damages for breach of contract. *Withrow v. Red Eagle Oil Co.*, 755 P.2d 622, 625 (Okla.1988). He asserts that the award of interest is purely ministerial, and may be addressed on appeal without the prerequisite of filing a timely petition in error. See, *Reardon v. McDougal*, 524 P.2d 342, 344 (Okla.1974). See also, *Baldwin v. Collins*, 479 P.2d 567, 570 (Okla.1970). Because the claim before the trial court was unliquidated, we do not reach this issue.

 The amount Robertson was entitled to recoup from Humphries was not agreed to, and was uncertain until determined by the trial court.

 Interest is allowed by law prior to judgment only if the amount recoverable is liquidated. *Champlin Refining Co. v. Phillips Petroleum Co.*, 269 P.2d 993, 996 (Okla.1954); *Dick v. Essary*, 201 Okla. 196, 203 P.2d 715–16 (1949). A claim is unliquidated if a trial is necessary to determine the amount due. *Allison v. Allen*, 326 P.2d 1059, 1063–64 (Okla.1958); Note, "Prejudgment Interest in Oklahoma," 34 Okla.L.Rev. 643, 647 (1981). If, as here, conflicting evidence is presented on the issue of damages, characterization of the claim as liquidated is unwarranted. *Withrow v. Red Eagle Oil Co.*, see this note, supra.

4. Assignments of error unsupported by convincing authority will not be considered on appeal, where it is not apparent without further research that the assignments are well taken. *Fleming v. Baptist Gen. Convention*, 742 P.2d 1087, 1096 (Okla.1987); *U.C. Leasing, Inc. v. State ex rel. State Bd.*, 737 P.2d 1191, 1194 (Okla.1987); *Cavett v. Peterson*, 688 P.2d 52, 59 (Okla.1984). Humphries' assertion is unsupported by any authority, other than the simple contention that the override's worth should have been considered in determining a fair commission.

5. This cause was originally before this Court in *Robertson v. Humphries (Robertson I)*, see note 1, supra.

6. An "overriding royalty" is a fractional interest in gross production of oil and gas under lease. *Hininger v. Kaiser*, 738 P.2d 137, 140 (Okla. 1987). It is free and clear of expenses incident to production and the sale of oil and gas from the leasehold. *O'Neill v. American Quasar Petroleum Co.*, 617 P.2d 181, 184 (Okla.1980). See also, 8 Williams & Meyers, "Oil & Gas Law—Manual of Terms," p. 65 (Matthew Bender 1987).

7. A "back-in right" is a reversionary interest in a lease which allows a party to a specified share

They also agree that Humphries was not to share in the retained overrides.

Humphries found prospective purchasers; and on January 17, 1975, the purchasers asked to inspect the leases. On January 18, 1975, Robertson and Humphries met the potential purchasers at the lease site. At that time, Robertson opened the valve on a shut-in gas well. Although Robertson told the purchasers that the well held the lease, the well was not located on the lease property. While Robertson was with the purchasers, Humphries met with the owner of the property who indicated that the leases had expired. Humphries obtained a ratification of the leases in Robertson's name.

On January 23, 1975, Humphries met with the purchasers. The purchasers offered $250,000.00 plus a ¹⁄₁₆ override to purchase the lease. Humphries informed Robertson that he could get him $100,000.00 and a ¹⁄₁₆ override. He did not disclose that the actual offer was for $250,000.00 with a ¹⁄₁₆ override, and Robertson did not inquire. Humphries requested confirmation of his authority to sell. Robertson sent a telegram, stating that Humphries had authority to accept a "¹⁄₁₆ override plus $100,000.00 payable on delivery of assignment for leases in Stephen's, Jefferson and Cotton counties Oklahoma." Later that afternoon, Humphries signed the contract for sale on behalf of Robertson, and the purchasers placed $50,000.00 in escrow.

Robertson delivered a completed assignment to Humphries on January 24, and demanded $100,000.00. Robertson threatened to withdraw the leases unless he received his money within ten days. Because of this threat, Humphries borrowed $100,000.00 on the strength of one of the purchaser's credit. Robertson and Humphries met at the First National Bank of Ponca City on February 3rd. When Humphries gave Robertson a $100,000.00 cashiers check, Robertson asked that the check be broken down into smaller denominations. This was done, and Robertson offered Humphries a $10,000.00 check as commission on the sale. Humphries refused, informing Robertson that he would make his

money from the purchasers. As Humphries and Robertson were leaving the bank, Humphries told Robertson that he had purchased the leases. Robertson replied that he hoped he was going to make some money on the deal, and Humphries assured him that he was. Humphries closed the sale with the purchasers on March 7. The individual purchasers made their checks, totalling $200,000.00, out to the financial institution housing the escrow account.

When Robertson listed the properties, he told Humphries that the leases were held by production. He made the same representation to the purchasers. Robertson provided Humphries with a map, and an unsigned engineering report covering the leases. Upon investigation, Humphries realized that the leases were not held by production, and that their primary terms had expired. However, Humphries obtained ratification of the leases in Robertson's name. When the purchasers attempted to borrow money on the leases, they discovered that the engineering report provided by Robertson was misleading. The report was unsigned and stapled to stationery of an engineering firm. When the purchasers were unable to get a signed copy from Robertson, they called the engineering firm. They were informed that the geologist who had prepared the report was not their employee.

On discovery that the leases were sold for $250,000.00 rather than $100,000.00, Robertson initiated an action alleging that Humphries had fraudulently concealed the terms of the sale, and had retained a "secret profit." The trial court found that there was an implied agreement between Humphries and Robertson for a net sale listing agreement. It also found that, because there was no duty to disclose the actual sale price under a net sale listing agreement, that no fraud had occurred. On appeal, we held in *Robertson I*, that in the absence of an express agreement regarding the commission in a net list sale

---

of the working interest when the assignee has recovered specified costs from production. *Mengden v. Peninsula Prod. Co.,* 544 S.W.2d

643–44 (Tex.1976); 8 Williams & Meyers, "Oil & Gas Law—Manual of Terms," see note 6 at p. 65, supra.

agreement, a broker is entitled to no more than a reasonable commission not to exceed the difference between the gross and the net sale price. The cause was remanded for determination of a reasonable commission, and to consider the allegations of fraudulent misrepresentation.

. On remand, the parties waived a jury trial, and the case was bifurcated on the issues of liability and damages. After hearing the liability portion of the cause, the trial court filed its journal entry on December 4, 1987. The trial court confirmed its previous finding of the existence of an implied net sale agreement, and found that Humphries breached his duty to his principal, Robertson, by failing to disclose the terms of the sale. The trial court characterized the failure to disclose as constructive fraud. The damages phase of the cause was heard on July 18, 1988. On November 20, 1988, the trial court entered judgment in favor of Robertson for $146,-250.80, less a *quantum meruit* commission for Humphries of $50,000.00. The trial court found that Robertson's claim was unliquidated, and denied a claim for pre-judgment interest under 23 O.S.1981 § 6.[8]

I

THE CAUSE IS GOVERNED BY THE HOLDING IN *Robertson v. Humphries,* 708 P.2d 1058, 1060 (Okla.1985), THAT, IN THE ABSENCE OF AN EXPRESS AGREEMENT REGARDING THE COMMISSION IN A NET LIST SALE AGREEMENT, A BROKER IS ENTITLED TO NO MORE THAN A REASONABLE COMMIS-SION NOT TO EXCEED THE DIFFER-ENCE BETWEEN THE GROSS AND THE NET SALE PRICE.

 Although Humphries recognizes that "the trial court correctly based its determination of a reasonable commission on *quantum meruit,*" he asserts that there was an express net list sale agreement entitling him to retain all profits over the $100,000.00 paid to Robertson. He also argues that Robertson had actual knowledge that Humphries had purchased the leases for resale, and had constructive notice of the $250,000.00 sale price. Robertson insists that he had no constructive or actual notice of the terms of the contract for sale, and that the instant cause is governed by this Court's pronouncement in *Robertson I.*

In *Robertson I,* the trial court found that there was an implied agreement that Humphries was to retain all profit over the $100,000.00 requested by Robertson. This finding of fact was not challenged on appeal. We reversed the trial court's finding that Humphries was entitled to all over the net sale price. We recognized the well settled principle of law in *Robertson I* that "in the absence of an *express* agreement regarding the commission in a net list sale agreement, a broker is entitled to no more than a reasonable commission which may not exceed the difference between the gross price and the net." [9]

The facts here are identical to those presented by the first appeal. Therefore, *Robertson I,* is the "law of the case," [10] and governs this cause.[11] As the "law of the

**8.** Title 23 O.S.1981 § 6, see note 3, supra.

**9.** *Vahlberg v. Callaway,* 202 Okla. 504, 215 P.2d 543, 546 (1950); *Wilcox v. Reynolds,* 169 Okla. 153, 36 P.2d 488, 491 (1934); *Bateman v. Richard,* 105 Okla. 272, 232 P. 443–44 (1925); J. Lowe & K. McKeown, "Mineral Law Section Annual Survey of Significant Developments," 57 O.B.J. 735, 737 (1986); R. Musser, "1985 Supreme Court & Court of Appeals Cases Pertaining to Oil & Gas & Real Property," 57 O.B.J. 725, 729 (1986).

**10.** The "law of the case" doctrine operates to bar relitigation of issues that have been settled by an earlier appellate opinion in the case. *Muncrief v. Memorial Hosp.,* 767 P.2d 400, 403 (Okla. 1988).

**11.** *Berland's Inc. v. Northside Village Shopping Center, Inc.,* 447 P.2d 768, 774 (Okla.1968); *Smith v. Owens,* 397 P.2d 673, 678 (Okla.1963); *Ada Coca–Cola Bottling Co. v. Asbury,* 206 Okla. 269, 242 P.2d 417, 422 (1952).

case," the original appeal controls all subsequent proceedings, and will not be reversed on a second appeal. Only when the prior decision is found to be erroneous, and the Court is satisfied that failure to reverse will result in a gross or manifest injustice will the cause be overturned.[12]

We find that *Robertson I* is neither palpably wrong nor does it operate to inflict gross or manifest injustice. The finding that Humphries was entitled to no more than a reasonable commission for his efforts in selling the leases corresponds with the rule that retention of the balance of proceeds in excess of a net price in a net list sale contract must be premised upon an express agreement.[13] The trial court awarded Humphries $50,000.00. This sum represents a 20% commission. Testimony on what would constitute a fair commission under the facts ranged from 6% to 10% of the sale price to the entire $250,000.00.[14] In an action in which jury trial is waived, a judgment based on conflicting evidence which reasonably tends to support the judgment will not be disturbed on appeal.[15] Based upon the diversity of the evidence before the trial court on the issue of a reasonable commission for the sale of oil and gas leases, we cannot say the commission of $50,000.00, found by the trial court to be adequate, is unwarranted by the evidence.

## II
## TESTIMONY THAT A PARTY WOULD HAVE CHOSEN THE TRUE TERMS OF

A CONTRACT IS UNNECESSARY TO SHOW DAMAGES IN AN ACTION BASED ON FRAUD IF IT IS UNREASONABLE TO CONCLUDE THAT THE PARTY, ADVISED OF THE FACTS, WOULD HAVE ACCEPTED MATERIALLY LESS FAVORABLE TERMS.

■ Humphries insists that the trial court erred in finding him guilty of constructive fraud, because to do so it had to presume Robertson had been damaged. Robertson alleges the disproportionate commission is evidence in itself that he suffered from the transaction.

The only authority Humphries cites in support of his position is *Tyler v. Hartford Accident & Indemn. Co.*, 195 Okla. 523, 159 P.2d 722, 725 (1945). In *Tyler*, this Court listed the elements of actionable fraud. Those elements are: 1) a material, false representation, 2) made with the knowledge of its falsity, or recklessly made without knowledge of its truth, and as a positive ascertion; 3) with the intention that it be relied upon by another; 4) reliance thereon by another party to its injury; and 5) that all elements be proven with a reasonable degree of certainty.[16] Humphries relies on *Tyler* for the proposition that Robertson failed to prove an essential element of fraud—damages.

Humphries asserts that in order to prove damages, Robertson had to present evidence that, given the opportunity, he would

---

**12.** *Cavett v. Peterson,* 688 P.2d 52, 57 (Okla. 1984); *Severson v. Roberts,* 197 Okla. 121, 168 P.2d 615, 617 (1946); *Powell v. United Mining & Milling Co.,* 107 Okla. 170, 231 P. 307, 314 (1924).

**13.** *Vahlberg v. Callaway,* see note 9, supra; *Wilcox v. Reynolds,* see note 9, supra; *Bateman v. Richard,* see note 9, supra; J. Lowe & K. McKeown, "Mineral Law Section Annual Survey of Significant Developments," see note 9, supra; R. Musser, "1985 Supreme Court & Court of Appeals Cases Pertaining to Oil & Gas & Real Property," see note 9, supra.

**14.** Allowing the entire purchase price to represent the commission is based on the premise that, in certain circumstances, the broker may also receive a portion of the retained override.

Because Humphries did not retain any override, it was the opinion of one witness that the entire purchase price would have been a fair commission.

**15.** *Acme Glass v. E.V. Cox Constr. Co.,* 578 P.2d 347, 349 (Okla.1977); *State ex rel. Dept. of Highways v. Sharpensteen,* 538 P.2d 1044, 1046 (Okla.1975); *Marple v. Hinson,* 470 P.2d 1001, 1003 (Okla.1970).

**16.** See, also, *Silver v. Slusher,* 770 P.2d 878, 881 (Okla.1988), *cert. denied,* — U.S. —, 110 S.Ct. 70, 107 L.Ed.2d 37 (1988); *Gay v. Akin,* 766 P.2d 985, 989 (Okla.1988); *Dawson v. Tindell,* 733 P.2d 407–08 (Okla.1987).

have opted to take the $250,000.00 on the closing date of March 7, rather than taking the $100,000.00 on February 3. This argument is unpersuasive. The teaching of *Rogers v. Brummett*, 92 Okla. 216, 220 P. 362, 366 (1923), which involved an action to cancel a note and mortgage, and to recover monies paid for land is controlling. In *Rogers*, a real estate company offered land for sale. It represented that the property was fertile, and well suited to the cultivation of a variety of fruits and vegetables. Potential purchasers were invited to view the land, and to meet people living in the area. The real estate company hand-picked those parties potential purchasers would meet. This Court held that the real estate company's actions in denying the purchasers access to those residents from whom they could inquire as to the condition of the property constituted fraud. One of the plaintiffs in *Rogers*, Annie Brummett, failed to testify at the trial of the cause. Despite this fact, it was presumed that she was induced to purchase the property by the fraudulent acts and representations of the real estate company. This presumption was based in part on the fact that, under usual circumstances, parties will not bind themselves to purchase property for a substantial sum if the property is unsuited for their needs, and not of the quality represented by the seller.

Here, the trial court found that it was unreasonable to conclude that Robertson would have reduced his price by two thirds, the override by one-half,[17] and then paid a commission of $150,000.00 while retaining a purchase price of only $100,000.00 had he known the true terms of the sale. We are of the same opinion. Just as the facts in *Rogers* support a finding that, had the true facts been known, the property would not have been purchased, the facts here support a finding that Robertson would not have accepted the $100,000.00 had he been advised of the actual terms of the sale.

## III

## ACQUIESENCE IN INEQUITABLE CONDUCT BARS INVOCATION OF THE "CLEAN HANDS DOCTRINE" AS A DEFENSE.

 Humphries argues that Robertson's misrepresentations concerning the status of the leases to the third-party purchasers prohibits him from seeking judicial relief. Robertson asserts that because the leases were ratified before Humphries obtained a loan to "purchase" the leases, he was never at risk on the title.[18] Robertson also insists that any alleged misrepresentation does not justify Humphries' failure to disclose the leases' actual selling price.

Humphries relies on a trilogy of cases for the proposition that Robertson is estopped to seek equitable relief by his attempts to defraud the purchasers. In *Wickham v. Simpler*, 198 Okla. 580, 180 P.2d 171–72 (1946), property was sold and a note and mortgage taken back. The mortgages were made payable to a third-party for the purpose of placing the debt beyond reach of the seller's creditors. Both the seller and the purchaser understood the reason the note and mortgage were given to a third party. When the seller attempted to collect the debt from the purchaser, recovery was denied because of the joint deception. In *Camp v. Camp*, 196 Okla. 199, 163 P.2d 970, 972 (1945), one brother conveyed land to a family-owned partnership on the pretense of paying off a debt. There was an oral understanding that the land would be reconveyed once the brother obtained a divorce. When the brother sought to enforce the oral contract, relief was denied because the transaction had been devised to defraud the third-party wife. In *Rust v. Gillespie*, 90 Okla. 59, 216 P. 480, 483 (1923), a conveyance of land was made to enable the seller to file a claim on government land. The conveyance was made with the oral understanding that the land would be reconveyed at a

---

**17.** The final price Robertson received was one-third of his original asking price of $300,000.00, and one-half of the requested $\frac{1}{8}$ override.

**18.** Robertson recognizes that he is barred from asserting that Humphries' fraudulent actions precluded recovery of any commission. The counter-appeal filed by Robertson on April 7, 1989, was untimely.

later date. When the sellor attempted to recover the property, judicial intervention was denied because of the attempt to defraud a third party. In each of these cases, the third party had either been injured by the inequitable conduct, or would have suffered damage if relief had been granted.

Equity does not require that a party have spotless hands to invoke its aid. Not every stain will bar the right of a petitioner for relief.[19] A court should not ordinarily lend its judicial power to support inequitable conduct. However, courts need not always permit a wrongdoer to retain the profits of wrongdoing merely because another party is guilty of transgressing equitable principles.[20] Here, one of the third-party purchasers testified that Robertson misrepresented the authenticity of the engineering report. However, there was no allegation that the party suffered a detriment. On the contrary, development of the leases was a profitable venture—one estimate indicated that a ⅛ override should be valued at $6,000,000.00. Humphries' argument that the representation that the leases were held by production put him at risk is unpersuasive. Humphries obtained a ratification of the leases in Robertson's name on January 17, 1975. The formal offer to purchase the property was not made until January 23.

Robertson's conduct during negotiations for the sale of the leases is not to be applauded; however, we cannot say from the record presented that his conduct was so inequitable as to deny him relief in the instant cause. Humphries was aware before the sale was completed that at least some of the representations made by Robertson were inaccurate. When Humphries realized the leases were not valid, he obtained ratification in Robertson's name. This was presumably in Humphries' own interest. He would not have been entitled to a commission on the sale if Robertson did not in fact own the leases. Equity provides no relief when its aid becomes necessary through the party's own fault.[21] Here, Humphries became a party to Robertson's deception by obtaining ratification. His participation prevents invocation of the clean hands doctrine.

## CONCLUSION

*Robertson I*, controls our finding that Humphries is entitled to no more than a reasonable commission. The trial court was presented with conflicting evidence on the issue of what would constitute adequate compensation. The finding that a commission of $50,000.00 represented a *quantum meruit* recovery will not be disturbed on appeal. Under the undisputed facts, Robertson accepted an offer that represented one-third of his asking price, one half of his requested override, and gave up the right to a back-in after payout. It is unreasonable to conclude that Robertson would have chosen the sale price of $100,000.00 rather than the $250,000.00 actually received by Humphries. Under these facts, it was unnecessary for Robertson to testify that he would have chosen the higher price in order to show damages in a cause of action for fraud. Humphries became a party to Robertson's deception by obtaining ratification of leases which had expired under their own terms. He is estopped by his acquiesence in Robertson's misrepresentation that the leases were held by production to assert the clean hands doctrine as a defense.

## AFFIRMED.

HARGRAVE, C.J., and HODGES, LAVENDER and DOOLIN, JJ., concur.

19. *Houston Oilers, Inc. v. Neely,* 361 F.2d 36, 42 (10th Cir.1966), *cert. denied,* 385 U.S. 840, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966), *reh'g denied,* 385 U.S. 942, 87 S.Ct. 285, 17 L.Ed.2d 224 (1966); *Hoehn v. Crews,* 144 F.2d 665, 672 (10th Cir. 1944), *aff'd,* 324 U.S. 200, 65 S.Ct. 600, 89 L.Ed. 870 (1945).

20. *Johnson v. Yellow Cab Transit Co.,* 321 U.S. 383, 387, 64 S.Ct. 622, 624–25, 88 L.Ed. 814, 818–19 (1944).

21. *B & M Int'l Trading Co. v. Woodie Ayers Chevrolet, Inc.,* 765 P.2d 782, 784 (Okla.1988); *State ex rel. Burk v. Oklahoma City,* 522 P.2d 612, 619 (Okla.1973); *Sautbine v. Keller,* 423 P.2d 447, 451 (Okla.1966).

**1270**

SIMMS, J., concurs in judgment.

OPALA, V.C.J., and ALMA WILSON and SUMMERS, JJ., dissent.

OPALA, Vice Chief Justice, dissenting.

I recede from the court's opinion and from its judgment. On this record, I would find that, regardless of the parties' earlier agreement, *Humphries* conducted the sale in suit *not as Robertson's* agent, but as either principal (acting *solely* for himself and *without* an undisclosed principal) *or* as *Robertson's* broker dealing under an *implied* net list price arrangement. Because *Humphries is not accountable as a fiduciary,* I would allow *no* recovery against him.

Today's pronouncement fails *accurately to target* these critical issues in contest here and below, affords a flawed analysis of the claim's essential characteristics, and hence applies misguided *notions of the corrective process that is the parties' due on review of this case.*

*Nothing* in the settled-law-of-the-case doctrine counsels against a meaningful re-examination of the *central issue now on review* in this appeal. It is clearly *not too late today* for this court to settle, once and for all, the *true legal status* of *Humphries* vis-a-vis *Robertson* at the *critical point* in controversy—when the transaction *came to be consummated.*[1] The law inexorably commands that this decision *not* be rested *solely* on the text of these individuals' earlier contract. Rather, the resolution must be made on the basis of *all relevant facts* that surrounded the transaction and transpired *through* the sale's completion. For a proper assessment of the dispositive issue in contest the proof to be considered would have to *include* the seller's *unqualified acceptance of the net list price.*[2]

---

1. The court's earlier pronouncement in *Humphries I, Robertson v. Humphries,* Okl., 708 P.2d 1058 [1985], neither reaches nor resolves Humphries' *status* at the sale's consummation. It does not prescribe the legal norm that is to guide the trial judge *on this central issue* at retrial. Questions *not* settled by a prior opinion are open for examination in a later appeal in the same case. See *Reeves v. Agee,* Okl., 769 P.2d 745, 756 [1989].

2. *Enterprise Mgmt. Consul. v. Tax Com'n,* Okl., 768 P.2d 359, 362 [1988].